## FIRST NAT. BANK OF SILOAM SPRINGS v. MUNDING.

No. 10304—Opinion Filed July 26, 1921.

(Syllabus.)

1. Banks and Banking—Deposit of Draft—Acceptance by Bank for Collection.

When the drawer of a draft deposits it in the bank with which he is transacting his banking business and receives credit in his checking account for the amount of the draft subject to the right of the bank to charge the draft back to him if not paid, and with the agreement that the bank will charge him interest on the amount of the draft until the money is received by the bank, the bank thereby accepts the draft for collection.

2. Same—Title to Proceeds of Draft—Garnishment.

A bank receiving a draft for collection from the drawer is not the owner of the proceeds of its collection, but the proceeds belong to the drawer, and they are subject to garnishment.

3. Same—Action Against Drawer—Sufficiency of Evidence.

The evidence examined: held, that it reasonably tends to support the judgment.

Error from Superior Court, Muskogee County; Guy F. Nelson, Judge.

Action by M. A. Munding against A. B. Currants: First National Bank of Siloam Springs, Arkansas, intervener. Judgment for plaintiff and against intervener. Intervener appeals. Affirmed.

Williams & Williams, for plaintiff in error.

Earl Bohannon, for defendant in error.

MILLER, J. This action was commenced in the superior court of Muskogee county by M. A. Munding, doing business as the New State Flour & Feed Company, against A. B. Currants, trading as the A. B. C. Flouring Mills, to recover the sum of $881.79 by reason of shortages in the shipment of grain as set forth in the plaintiff's petition.

During the months between October, 1917, and April, 1918, the plaintiff was in the grain and feed business at Muskogee. The defendant was engaged in handling grain and shipping it in carloads, with his headquarters at Siloam Springs, Arkansas. The plaintiff in his petition set out eight separate causes of action. During the time above mentioned, the plaintiff purchased from defendant three carloads of oats and five carloads of corn. The defendant would ship a carload of grain to the plaintiff and send the bill of lading with draft attached through the banks. The plaintiff would take up the draft and bill of lading by paying the amount called for, but in each instance there was a shortage in the number of bushels of grain actually contained in the car as compared with the amount set forth in the bill of lading and for which the plaintiff had paid in taking up the draft. These shortages in amount ranged from $49.04 to $251.10, making a total of the amount sued for by the plaintiff.

On or about May 1, 1918, a car of grain arrived in Muskogee shipped by defendant to the plaintiff with draft attached as usual. The draft was delivered by defendant to the First National Bank of Siloam Springs, Ark., and was received at Muskogee by the Exchange National Bank. The amount of the draft drawn on this car of grain was $1,148,-35, which the plaintiff paid, and obtained possession of the car of grain. The plaintiff immediately caused a garnishment summons to be served in this action on the Exchange National Bank of Muskogee. The Exchange National Bank of Muskogee answered the garnishment summons, which answer in part is as follows:

"That at the time of the service of the garnishment summons in this case it had on hand the sum of $1,148.35, which it is now holding subject to the order of this court under the following circumstances: .

"That there was drawn through this answering defendant a draft for the above named sum, which draft was drawn upon the plaintiff in this cause of action; that thereupon the plaintiff paid said draft by delivering the money to this answering defendant, and immediately thereafter said sum was garnished by said plaintiff in this cause.

"And said answering garnishee further states that it is informed that the First National Bank of Siloam Springs, Arkansas, claims to be the owner of said fund and to be entitled to the payment thereof, and that

said First National Bank desires to be made a party defendant in this suit.

"And said answering garnishee hereby tenders in court the sum of $1,148.35, as above mentioned, and asks that it be received by the clerk, and this garnishee released of all liability in this action."

Thereafter, and on the 4th day of May, 1918, the First National Bank of Siloam Springs, Ark., by leave of court, filed its answer of intervention, in which answer the intervener claimed that it was the owner of the $1,148.35 so garnished in the hands of the Exchange National Bank of Muskogee. The plaintiff denied that the First National Bank of Siloam Springs was the owner of the money so garnished, and this issue was tried in the superior court of Muskogee county. The plaintiff and the intervener each waived a jury and submitted the case to the court. Judgment was rendered in favor of the plaintiff and against the intervener, holding that the money so garnished in the hands of the Exchange National Bank of Muskogee was the property of the defendant, A. B. Currants, and that the intervener was not entitled to hold the same as against the plaintiff. From this judgment the intervener perfected this appeal, and appears here as plaintiff in error. The plaintiff in the court below appears here as defendant in error, and they will be so referred to.

The plaintiff in error makes two assignments of error, which are as follows:

"First. The court erred in admitting testimony on the part of the defendant in error as to the custom of banks in handling drafts, in that the witnesses were permitted to testify the custom of their bank in Muskogee in the state of Oklahoma, when in this case the draft was purchased at Siloam Springs by a national bank in the state of Arkansas.

"Second. That the judgment of the court was contrary to the weight of evidence."

The first assignment of error is not well taken. The evidence shows that each of the witnesses testified to the custom prevailing in Eastern Oklahoma and Western Arkansas, which embraces the territory in which Siloam Springs is situated. Even had it been error to admit this testimony, the error was cured by the testimony of witness Ford, who testified that he was assistant cashier of the First National Bank of Siloam Springs, Ark.; that in handling these drafts for A. B. Currants his bank would credit A. B. Currants' account for the amount of the draft and charge him interest on this amount until the draft had been collected and the money received by the bank. Ford admitted the draft was accepted subject to payment. If not paid, the bank would

have the privilege of charging it back to A. B. Currants. Under this state of facts, the plaintiff in error accepted the draft for collection.

"A bank receiving from the drawer a draft for collection is not the owner of the proceeds of its collection, but the proceeds belong to the drawer, and they are subject to garnishment." Hobart Nat. Bank v. Fordtran (Texas) 122 S. W. 413.

"A city treasurer deposited checks in a bank, indorsed by him 'For deposit', and the checks were immediately credited to him on his pass book, though not in pursuance of any agreement to that effect. He had been a depositor in the bank for some years, but had no agreement that his checks should be treated as cash, or that he should draw against them before collection. The bank became insolvent before the checks were collected, and their proceeds passed into the hands of a receiver. Held, that no title passed to the bank except as a bailee, and that the depositor was entitled to the proceeds. 49 Fed. Rep. 790 affirmed." Beal, Receiver, v. City of Somerville (Mass.) 50 Fed. 647.

R. J. Alfrey, vice president of the First National Bank of Siloam Springs, testified that in this instance this draft was sent to the Commercial National Bank of Muskogee and by it returned to the First National Bank of Siloam Springs. A. B. Currants then directed the plaintiff in error to send the draft to the Exchange National Bank of Muskogee, stating that it would be paid when it arrived there. This evidence shows that A. B. Currants still retained control of the draft to the extent of directing where it should go. The evidence of Ford and Alfrey in effect shows that A. B. Currants obtained a loan from the bank of the amount of this draft. The transaction was, in effect, the same as though Currants borrowed this money on his note, except that he signed the draft in place of a note, received credit at the bank for the amount, and paid interest on it until the money was actually paid to the bank. If the money was not returned to the bank as the proceeds of the draft, the bank would charge it back to Currants. Alamo Nat. Bank of San Antonio v. Dawson Produce Co., 78 Okla. 235, 190 Pac. 393.

The evidence introduced by the plaintiff in error sustains the judgment of the trial court, and this disposes of the second assignment of error.

Finding no reversible error, the judgment of the trial court is affirmed.

PITCHFORD, V. C. J., and JOHNSON, ELTING, KENNAMER, and NICHOLSON, JJ., concur.