## KANSAS FLOUR MILLS CO. v. NEW STATE BANK OF WOODWARD et al.

No. 16785—Opinion Filed June 15, 1926.

Rehearing Denied April 19, 1927.

**1. Banks and Banking—Requisites to Allowance of Preferred Claim Against Bank Commissioner in Charge of Insolvent Bank.**

Before a claim can be allowed as a preferred claim against the State Bank Commissioner in charge of an insolvent bank, it is necessary to establish, first, that the claim in question is a trust fund; and, second, that the fund in some form was a part of the assets of the bank which passed into the hands of the commissioner.

**2. Same—Collection Under Instruction as Trust Fund.**

A state bank accepting for collection a draft expressly marked "not to be treated as a deposit—the funds obtained through its collection are to be accounted for to us and are not to be commingled with the other funds of the collecting bank," handles such collection as agent and the proceeds become a trust fund in the hands of the bank, subject to be traced into the hands of the Bank Commissioner who takes over the bank as insolvent.

**3. Trusts — Trustee Commingling Trust Money With His Own, Presumed to Have Used His First.**

Where trustee commingles his beneficiary's money with his own, and then invades the common store, he will be presumed to have used his own money first; the law presuming that he does right rather than wrong.

**4. Banks and Banking—Receipt by Bank of Customer's Check Same as Currency in Collection of Trust Item for Third Person.**

Where a bank accepts a draft for collection under paragraph 2 above and receives in payment of such draft a check drawn upon itself by one of its own depositors who has then to his credit a balance sufficient to cover his check, and the bank has on hand sufficient to pay the check, the transaction is the same as though the bank had actually received the currency in payment of the draft. The intention of the parties, in such case, cannot be defeated by mere methods of book-keeping and banking.

**5. Same—Failure of Collecting Bank—Duty of Bank Commissioner to Pay Trust Fund as Preferred Claim.**

In such case, it being shown that the bank, at the time, had sufficient cash to cover the item, and that sufficient cash came into the hands of the Bank Commissioner as liquidating agent, the assets of the bank in his hands being thus augmented, the commissioner should pay such trust fund as a preferred claim.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Woodward County; Charles Swindall, Judge.

Action by the Kansas Flour Mills Company against New State Bank of Woodward, O. B. Mothersead, State Bank Commissioner, et al. Judgment for defendants, and plaintiff appeals. Reversed.

Clyde H. Wyand, T. A. Noftzger, George W. Cox, W. J. Masemore, and R. L. Ne Smith, for plaintiff in error.

O. C. Wybrant, Gentry Lee, and M. W. McKenzie, for defendants in error.

Opinion by ESTES, C. The Kansas Flour Mills Company on the 5th day of October, 1923, shipped a carload of flour from Anthony, Kan., to Woodward, Okla., and attached the bill of lading to a draft drawn by the plaintiff on Adams & Crump of Woodward, Okla. This draft with the bill of lading attached was mailed to the New State Bank of Woodward for collection. The instructions to the bank were printed on the face of the draft as follows:

"This draft is a cash item and is not to be treated as a deposit. The funds obtained through its collection are to be accounted for to us, and are not to be commingled with the other funds of collecting bank."

On October 11, 1923, the car of flour having arrived at Woodward, Adams & Crump drew their check on the New State Bank for the amount of the draft, namely, $913.34. Adams & Crump on that day had a balance in the New State Bank in their checking account exceeding the amount of the check, and the New State Bank accepted the check, and stamped it paid, and charged it to the account of Adams & Crump, and at the same time delivered to Adams & Crump the draft with the bill of lading attached, and they

had the flour. The New State Bank did not remit to the plaintiff the proceeds of the draft, and on the 13th day of October, 1923, its doors were closed, and it was taken over by the Bank Commissioner for liquidation. It appears that, at the time Adams & Crump presented their check to the New State Bank, the bank had on hand cash more than sufficient to pay said check, and continued to have cash on hand in excess of said amount until it was taken over by the Bank Commissioner on the 13th, at which time there was on hands $3,457.03 in cash, which came into the hands of the Bank Commissioner. The plaintiff in error duly presented its claim to the commissioner, who allowed same as a general but not a preferred claim. Plaintiff in error then filed this proceeding in the district court of Woodward county to compel priority thereof, alleging that the $913.34 was a trust fund in the hands of the commissioner. The matter was tried upon an agreed statement of facts, and from a judgment in favor of the commissioner, plaintiff brings this proceeding in error.

1. Before a claim can be allowed as a preferred claim against the State Bank Commissioner in charge of an insolvent bank, it is necessary to establish, first, that the claim in question is a trust fund, and, second, that the fund in some form was a part of the assets of the bank which passed into the hands of the commissioner. Chetopa State Bank v. Farmers' & Merchants' State Bank et al. (Kan.) 218 Pac. 1000.

2. While there is considerable divergence of authority whether the relation between the party forwarding for collection and the collecting bank remains that of principal and agent after the bank has made the collection, or whether it becomes that of debtor and creditor, most of this conflict arises from the particular wording of the indorsement or instructions, or custom which may be invoked in the absence of particular instructions. In this case, however, the instructions were plainly imprinted on the face of the draft, and notified the collecting bank that it was acting as agent throughout, and that the proceeds of the collection were not to be treated as a deposit and not to be intermingled with the general funds of the bank, thus expressly negativing the notion that the relation of depositor—debtor and creditor—should ever arise. When, under these instructions, the New State Bank undertook the collection of this item, it must be considered to have acquiesced in the conditions of its agency. This is elementary. Thus, we have no difficulty in determining that the item, claim, or collection in controversy was, when received by the bank, and continued to be, a trust fund. The difficult question is whether there was a trust fund which, in some form, became a part of the assets of the bank and passed into the hands of the commissioner. There would be no difficulty in tracing the proceeds into the hands of the commissioner if the payment had been made by cash instead of check, for the reason that the stipulated facts show that, from the moment of the transaction until the bank was taken over by the commissioner, there was, at all times, in the vaults more than enough cash to cover the proceeds of the draft. Willoughby v. Weinberger, 15 Okla. 226, 79 Pac. 777.

3, 4. The contention of the commissioner is that since Adams & Crump, instead of taking up the draft by payment of currency from hand to hand, delivered to the New State Bank their check upon that bank, the transaction did not constitute an augmentation of cash in the hands of the bank—that the bank did not get the money—but that there was merely a shifting of credits. This is the only serious question in the case, and it must be admitted at once that it is one upon which very respectable courts have reached different conclusions. Goodyear Tire & Rubber Co. v. Hanover State Bank (Kan.) 204 Pac. 992, is a late authority against the commissioner's contention. The same Justice who wrote the opinion also wrote a dissenting opinion, which dissent ably expresses the position of the commissioner herein. In the dissent, it is observed that the fact that the liabilities of the bank have been diminished by the amount of the check of Adams & Crump does not answer the requirement that the assets should be made larger by the transaction, because the liabilities of an insolvent corporation are not equivalent to cash; that if the money had merely gone to the payment in full of the debt of the bank to Adams & Crump, each other creditor would suffer more or less, according to the degree of disparity of the assets and liabilities. We think the weakness of this argument is that at the time of this transaction the bank had not been declared insolvent, and for the purpose of the question in hand, the insolvency should not be considered. We must determine the effect of the transaction as of the time when it took place. The dissent states in effect, under facts similar to the instant case, that the assets of the bank were in no way increased; that no change in the existing condition was contemplated, except the transfer of a credit from Adams & Crump to the plaintiff. To say such transfer of

credit was contemplated is to violate the very spirit and letter of the agreement between plaintiff and the bank and their intention in the instant case. Said dissent further urges that the theory' of an increase in assets can be given effect only by changing the transaction—by regarding the arrangement for the transfer from one person to another of money the bank was already holding as the bringing of new money to it. We do not think such theory of an increase by the transaction involves changing the same. Rather, it involves carrying out the agreement by means of the transaction. How can the commissioner claim that the bank did not get the money covering this item, when it already had it, 'according to the facts, in its vault? That is, it had the money equivalent of its debt to Adams & Crump as depositor. It was the duty of the bank to pay the check of Adams & Crump in cash, or close its doors. It is as if the officer of the bank had said to Adams & Crump:

"We have authority to accept cash only on this draft. The money is here to pay your check both in your account and in the cash funds of the bank. It would be an idle thing to hand you the amount of your check and receive, eo instanti, the sum back from you. We will consider that as done which should have been done."

By the contract between the bank and plaintiff, it was the duty of the bank, on accepting the check of Adams & Crump, to segregate the amount of the item in cash either in a special account—not a general deposit—or do some other thing to prevent the commingling of the $913.34 with the general deposits of the bank, and to transmit or remit the same at once to plaintiff. This involves methods of bookkeeping and methods of banking business. It was the intention of all the parties that this fund should not be commingled with the other deposits, but that it should be a trust fund. We do not think such intention of the parties—expressed in writing by plaintiff and accepted by the bank—can be defeated by the alchemy of bookkeeping or methods of doing business in the bank.

In Hawaiian Pineapple Co. v. Browne (Mont.) 220 Pac. 1114, it is said:

"As it was the duty of the bank to collect the cash due upon the draft, and as the bank had the cash with which to pay it, as a matter of law it must follow that the bank did set aside out of its cash then on hand a sum of money sufficient to pay the draft, and that the sum of money is held as trustee of the plaintiff. This conclusion we think is consistent with sound reasoning. State Na-

tional Bank v. First National Bank, 124 Ark. 531, 187 S. W. 673; Goodyear Tire & Rubber Co. v. Hanover State Bank, 109 Kan. 772, 204 Pac. 992, 21 A. L. R. 677."

When a trustee commingles his beneficiary's money with his own, and then invades the common store, he will be presumed to have used his own money first; the law presuming that he does right rather than wrong. Hawaiian Pineapple Co. v. Browne, supra; Willoughby v. Weinberger, supra. The intention of the parties was directly in line with the duty of the bank, both to Adams & Crump and to the plaintiff. We therefore indulge the presumption that the bank did right; that by the substance and the very essence of the transaction, this fund must be deemed to have been segregated upon taking the amount thereof out of the account of Adams & Crump, though not so showing on the books of the bank, and that three days later, when the Bank Commissioner took charge of the bank, the sum of $913.34 of the assets was a special trust fund belonging to the plaintiff. If this be true, of course the assets in his hands were thereby augmented and this fund is traceable, the transaction being the same as if the bank had received the cash instead of the check for the collection. As supporting the view here expressed, see: Goodyear Tire & Rubber Co. v. Hanover State Bank, supra; Hawaiian Pineapple Co. v. Browne, 69 Mont. 144, 220 Pac. 1114; State Nat. Bank v. First Nat. Bank, 124 Ark. 531, 187 S. W. 673; Messenger v. Carrol Trust & Savings Bank, 193 Iowa 608, 187 N. W. 545; Arnot v. Bingham, 55 Hun, 553, 9 N. Y. S. 68; People v. Merchants Bank, 92 Hun, 159, 36 N. Y. S. 989. As bearing on the question, although not strictly in point, see: Fed. Reserve Bank of Richmond v. Peters, 139 Va. 45, 123 S. E. 379; Kesl v. Hanover State Bank, 109 Kan. 776, 204 Pac. 994; Kansas State Bank v. First State Bank, 62 Kan. 778, 64 Pac. 634; Washbon v. Linscott State Bank, 87 Kan. 698, 125 Pac. 17; People v. City Bank of Rochester, 96 N. Y. 32; First Nat. Bank v. Munding, 83 Okla. 7, 200 Pac. 158; City of Sulphur v. Farmers Nat. Bank, 101 Okla. 148, 224 Pac. 518.

The cases cited by the commissioner, which may be said to support his position, are; Anheuser-Busch Brewing Ass'n v. Clayton (5th C. C. A.) 56 Fed. 759; Beard v. Independent District of Pella, 31 C. C. A. 562, 88 Fed. 375; American Can Co. v. Williams, 176 Fed. 86; Nyssa Arcadia Drainage Dist. v. Bank (Dist. Ct.) 3 F. (2nd) 648; Clark Sparks & Sons Horse & Mule Co. v. Americus Nat. Bank (Dist. Ct.) 230 Fed.

738; Hecker-Jones-Jewell Milling Co. v. Cosmopolitan Trust Co., 242 Mass. 181, 136 N. E. 333, 24 A. L. R. 1148; Zimmerli v. Northern Bank & Trust Co., 111 Wash. 624, 191 Pac. 788. The Beard Case, supra, in reality involves a very different question. The Hecker-Jones-Jewell Case, supra, from Massachusetts, was decided on two grounds, the first being that under the circumstances there involved, considering the customs of the business, the collecting bank became a plain debtor for the amount collected. This was sufficient to decide the case, and the court's argument upon the point involved here, although very strong, lacks the force to which it would otherwise be entitled. The Zimmerli Case, supra, from Washington, presents a somewhat different state of facts, and, while it may be said to support the commissioner's position, it is to be noted that, under facts precisely like those in the Washington case, the New York Court of Appeals reached the opposite conclusion, People v. City Bank of Rochester, 96 N. Y. 32. The American Can Co. Case, supra, was affirmed in the Circuit Court of Appeals, 178 Fed. 421, but there the decision rested on the ground that the evidence did not show that the proceeds of the collections came into the hands of the receiver.

Of the other cases cited by the commissioner, several are easily distinguishable, on the ground that the bank was a plain debtor for the funds and did not hold them as trustee. Chetopa State Bank v. Farmers & Merchants Bank, 114 Kan. 463, 218 Pac. 1000; First Nat. Bank v. Farmers State Bank (Kan.) 237 Pac. 652: American Bank v. Peoples Bank (Mo. App.) 255 S. W. 943; American Nat. Bank v. Owensboro Savings Bank & Trust Co., 146 Ky. 194, 142 S. W. 239, 38 L. R. A. (N. S.) 146; Sayles v. Cox, 95 Tenn. 579, 32 S. W. 626,32 L. R. A. 715; People v. M. & M. Bank, 78 N. Y. 269. In other collection and trust cases, it was not shown that the proceeds came into the hands of the receiver American Can Co. v. Williams, supra; American Nat. Bank v. Owensboro Savings Bank & Trust Co., supra; Honer v. State Bank, 114 Kan. 123, 216 Pac. 822; Nelson v. Paxton, 113 Kan. 394, 214 Pac. 784. In others, deposits of checks received while insolvent were not traced into the bank's cash, or shown to have swelled the assets coming into the hands of the receiver in any form. Empire State Surety Co. v. Carroll County. 114 C. C. A. 435, 194 Fed. 593; City Bank v. Blackmore, 21 C. C. A. 514, 75 Fed. 771: Belleview State Bank v. Coffin, 22 Idaho, 210, 125 Pac. 816. These latter are strictly in line with the decision of the territorial

court in Willoughby v. Weinberger, supra. A further citation by the commissioner, Midland Nat. Bank v. Brightwell, 148 Mo. 358, 49 S. W. 994, is distinguishable, because it was not shown that the collecting bank had on hands sufficient funds to pay its depositor's check. A similar case, also, is City of Sulphur v. Farmers Nat. Bank, supra.

Believing that the views we have expressed are supported by the sounder reasoning and comport more nearly with natural justice, as well as the weight of authority, and that they are more in harmony with the previous decisions of this court, it results that the judgment of the district court should be and is reversed, and the cause remanded, with instructions to enter an order requiring the State Bank Commissioner to pay over to the plaintiff the proceeds of the draft, to wit, $913.34, without interest, since it does not appear that the funds have earned interest (Richardson v. Louisville Banking Co., 36 C. C. A. 707, 94 Fed. 442).

By the Court: It is so ordered.