## In re DRUMRIGHT STATE BANK.

### MAYTAG CO. et al. v. STATE ex rel. BARNETT, Bank Com'r.

No. 25586.   Feb. 5, 1935.

Speakman & Speakman, for plaintiffs in error.

Glenn O. Young, for defendant in error.

WELCH, J. In this case the question occurs on the asserted right to a preferred claim against the assets of the Drumright State Bank, a failed bank in the hands of the State Bank Commissioner.

The facts are the Maytag Company of Newton, Iowa, shipped a car of merchandise to Drumright, Okla., sending the bill of lading to the Drumright State Bank to be delivered when the bank collected $9,111.40, for immediate remittance to the Maytag Company.

E. L. Thomas, of Drumright, a depositor in the bank, with ample funds on deposit in his account, on August 9, 1932, took up the bill of lading, directing the bank to charge the item to his account, which the banker told him he would do. The bank delivered Thomas the bill of lading, charged the amount to the deposit account on the books of the bank, and executed its draft on a Tulsa bank payable to the Maytag Company, less collection charges of $10, and mailed the draft for $9,101.40 to the Maytag Company.

Before the draft could be cleared, while it was in transit, and on August 13, 1932, the Drumright State Bank was closed and the Bank Commissioner took charge, and the draft was not paid.

An agent for the Maytag Company at once called on Mr. Thomas and advised him that payment for the bill of lading had not been received, and he immediately, without knowledge of the facts, thinking that he still owed the company for the bill of lading, and desiring to preserve his credit with the Maytag Company, paid the Maytag Company the amount of the item, $9,111.40. Thereafter Thomas learned the true facts. and that the Maytag Company had no right to collect the money from him the second time; that he had paid this money to the

company on a mistake of fact without any legal obligation to do so, and he demanded the return of his money from the company. This demand was not complied with nor finally refused, but Thomas and the company seem to have undertaken to co-operate in the matter of presenting claim against the assets of the bank.

Two or three months after Thomas paid this money to the company, at a conference between the Maytag Company and Mr. Thomas, the company indorsed and delivered to Mr. Thomas the draft issued by the Drumright Bank, the purpose apparently being to bring about the filing of proper claim against the assets of the Drumright Bank.

Immediately thereafter Thomas presented the draft to the authority in charge of the assets of the bank, and filed a claim which, however, was prepared in the form of a common, not a preferred claim, which was at once approved by the liquidating agent and Bank Commissioner. It is suggested that such form of claim was filed inadvertently, in that failure to file a preferred claim resulted from lack of knowledge of the rights existing.

Thereafter, on December 12, a preferred claim was filed for the amount of the draft by the Maytag Sales Corporation, which was at once disallowed by the liquidating agent and Bank Commiss'oner. It is suggested in one of the briefs that the form of this claim was a letter, but it was written at length and in much detail, and appears to have been presented, received, and acted upon as a preferred claim without regard to the technical form. When this claim was presented Mr. Thomas requested permission to withdraw his common claim, but that permission was denied.

In February, 1933, the Maytag Company asked and obtained permission of the Bank Commissioner to amend the claim theretofore filed December 12th. That claim had erroneously used the name Maytag Sales Corporation in lieu of the correct name, Maytag Company, and to cure that error an amendment was made, and thereupon the amended or corrected claim of the Maytag Company was, in February, 1933, disallowed by the Bank Commissioner.

The Maytag Company then instituted this equitable action in the district court of Creek county seeking to be adjudged a preferred creditor or claimant against the Drumright State Bank in the sum of the draft, and thereafter E. L. Thomas intervened seeking that if for any reason judgment should not be entered in favor of the Maytag Company, then that he, by reason of the foregoing facts, be adjudged entitled to a preferred claim against the bank to the amount of the draft.

The action was resisted by the Bank Commissioner, and the trial court denied the petition and refused to decree the right to a preferred claim.

It is shown that on the dates mentioned, the Drumright bank had on hand much more than sufficient cash to cover the involved item, and had on deposit with the Tulsa bank more than sufficient money to pay the draft, and that when the Bank Commissioner took charge of the closed bank there came into his hands, among the assets of the bank, more than sufficient cash to cover the involved item.

The facts in this case clearly indicate that originally the Maytag Company was entitled to a preferred claim against the assets of the closed bank. That is settled by the former decision of this court in similar cases. It is unnecessary to quote from those cases, so we merely cite them with the statement that they are controlling on this point. See Kansas Flour Mills Co. v. New State Bank of Woodward et al., 124 Okla. 185, 256 P. 43; Thomas v. Mothersead, State Bank Com'r, 128 Okla. 157, 261 P. 363; First State Bank of Bristow et al. v. O'Bannon, 130 Okla. 206, 266 P. 472; State ex rel. Mothersead, State Bank Com'r, v. Excello Feed Milling Co. of St. Joseph, Mo., 131 Okla. 100, 267 P. 833; El Reno Mill & Elevator Co. v. Shull, Bank Com'r, et al., 167 Okla. 444, 30 P. (2d) 470.

But the defendant contends that the facts show that the right of the Maytag Company to a preferred claim was waived, or that the company should be estopped to claim a preference. And to support that contention the defendant relies on the fact of the second payment of $9,111.40, made by Thomas direct to the company, and the fact of the indorsement and delivery to Thomas of the draft drawn and sent to the company by the bank.

Thomas did make the payment to the Company, but he did so under a mistake of fact. He had already paid for the bill of lading. When the bank, with his authority, charged the amount of the item to his bank account and made its remittance to the Maytag Company, then certainly so

far as Thomas was concerned the bill of lading was paid for. While Thomas had authorized the bank to do that, he did not know that the bank had done so. The bank was closed, and while Thomas had in fact already paid for the bill of lading, he did not know that he had done so, and therefore he paid it again. In view of these facts it could hardly be argued that the Maytag Company had any real right to retain the money paid it by Thomas. Nor can it be successfully contended that such payment by Thomas operated to discharge the obligation of the bank to the Maytag Company. In 48 C. J. 720, it is said:

"Evidence of payment by a third person is inadmissible, unless it is also shown it was made for the debtor and accepted by the creditor as payment."

And in 3 Elliott on Contracts, page 84, par. 1928, is found this statement:

"And where the payment by a third person was not intended by the payor and creditor to operate as a discharge, the debtor cannot, ordinarily at least, take advantage of it as such."

See, also, Bradley & Metcalf Co. v. McLaughlin, 87 Okla. 34, 208 P. 1032, and Wallingford v. Alcorn, 75 Okla. 295, 183 P. 726.

At the time of making this payment Thomas did not know the details of the acts of the bank. He could not have had any intention to discharge the obligations of the bank to the Maytag Company, and did not have any such intention.

As to the act of the Maytag Company in indorsing and delivering the draft to Thomas in November, it does not appear that they intended that title to the draft should pass to Thomas. The evidence clearly indicates an intent merely to pass the draft to Thomas for the proper presentation of a claim against the bank. Thomas was a local resident, and it was doubtless thought that he could the more easily attend to the matter. We surely could not assume that Thomas intended to take title to that draft on a closed bank, at more than its face value, in settlement and discharge of his right to a refund or repayment of the $9,111.40, which he had erroneously paid the Maytag Company. If the common claim presented by Thomas and draft had been paid, then a different situation would result, but we do not find that the position of the defendant or the bank was changed in the slightest respect by the erroneous payment made by Thomas

to the Maytag Company in August, or by the indorsement and delivery of the draft to Thomas in November, nor did any prejudice result to the bank therefrom. Had the Banking Department permitted Thomas to withdraw his common claim when he requested permission to do so in December, the whole situation would have been clarified, but no reason is shown why it could not yet be withdrawn or disregarded without violating the rights of any one.

The form of the indorsement of the draft to Thomas was general, and had the bank relied thereon to its prejudice, then a different situation would exist, but such is not the case.

In 27 R. C. L. 909, it is said:

"A waiver may be express or implied, but in the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party had been misled, to his prejudice, into the honest belief that such waiver was intended or consented to. To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part. A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition."

In Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 P. 729, this court stated the rule in the sixth paragraph of the syllabus as follows:

"An essential element of estoppel is that the party invoking it must have been misled to his injury by the wrongful conduct of the party against whom it is invoked."

And in the case of Hughes v. Sparks, 98 Okla. 208, 224 P. 957, the first paragraph of the syllabus is as follows:

"In order to create an estoppel in pais, the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect."

We therefore conclude that the facts in this case do not show any waiver on the part of the Maytag Company, nor any estoppel against the company.

The defendant contends that the right of the Maytag Company to assert preference

is barred by the statute of limitations, and relies on section 9175, O. S. 1931. That section provides in material substance that:

"Immediately on taking charge of any failed bank the Commissioner shall cause notice to be given by advertisement in such newspaper as he may direct weekly for eight consecutive weeks, calling on all persons who may have claims against such bank to present the same to him and make legal proof thereof at a place and at a time to be fixed by the Commissioner. The Commissioner shall mail a similar notice to all persons whose names appear as creditors. * * * Claims presented after the expiration of the notice fixed for creditors shall be entitled to share in the distribution only to the extent of the assets in the hands of the Commissioner equitably applicable thereto."

In this case the time ran to December 13, 1932. The first claim for preference was filed December 12th, and was thereafter amended in February, 1933.

It does not clearly appear that it was the legislative intent, by this section, to permanently bar claims not presented in time. On the contrary, the section makes positive provision for the handling of claims presented after the expiration date. It is probably not necessary in this case to determine the exact force of this provision as a barring or limitation statute. If it was essential to the preservation of the rights of the Maytag Company that a claim be presented prior to December 13th, no reason is shown why the Banking Department could not properly permit an amendment of the claim filed on December 12th, but erroneously designating the name of the claimant corporation. That claim detailed the circumstances and made a clear reference to the transaction upon which the claim was based. It specifically referred to the collection item handled by the bank, and to the draft issued to the Maytag Company. The draft was then in the custody of the liquidating agent, and the records of the bank disclose that the entire matter was handled by the bank originally for the Maytag Company, a corporation, and not for the Maytag Sales Corporation. We conclude that the liquidating agent and the Bank Commissioner acted reasonably and justly in permitting the claim to be amended to show the correct name of the claimant to be the Maytag Company. It is to be noted that no prejudice resulted from this act, and there is nothing to indicate that the preferred claim of the Maytag Company could not have been properly allowed and paid in February, 1933, after it was amended and completed, as well as could have been done on December 12, 1932, had the claim been correctly filed in the first place. It is suggested that the prior disallowance of the claim filed December 12th should bar any right to amend, or authority to permit amendment, but we find no reasoning or authority to support that contention. Since the bank record shows, and the liquidating agent knew, that the collection transaction was handled for the Maytag Company, the claim of the Maytag Sales Corporation might have been disallowed for that reason. Then it was but proper that when the error was observed, and upon timely application, and while no rights had been adversely affected, that the amendment of the claim should be allowed and made. This could be done, and in this instance was done, before there was any material change in the status of the estate of the failed bank, and was, we conclude, right and just.

The details of this case disclose complications, but when they are analyzed and considered in the light of the rules of law applicable, it seems clear that the Maytag Company originally had the right to a preferred claim, that it did nothing that could be construed as a waiver of its right, or to estop it from asserting its right. This is an equitable action, and the trial court had before it the Maytag Company and the intervener, E. L. Thomas, as well as the Bank Commissioner and liquidating agent. The trial court should have decreed the Maytag Company to have a right to a preferred claim, and should have directed the Bank Commissioner to permit Thomas to withdraw his common claim, vacate the approval thereof, and cancel the draft, and to allow the Maytag Company a preferred claim in the sum of $9,101.40.

The judgment of the trial court is reversed, and the cause remanded, with directions to the trial court to enter proper judgment accordingly.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.