## POLLACK v. LEONARD & BRANIFF.

No. 15318—Opinion Filed May 12, 1925.

Rehearing Denied Sept. 8, 1925.

**1. Judgment — Vacation of Default—Defenses Pleadable.**

An order vacating a default judgment and permitting the defendant to appear, plead or answer and have its rights adjudicated, and which does not by express terms limit the plea or defense to be interposed, confers upon the defendant the right to plead any defense or interpose any plea which would have been permissible in the original case.

**2. Set-Off and Counterclaim — Subjects of Counterclaim—Statute.**

Under the provisions of section 274, Comp. St. 1921, the defendant may plead by way of counterclaim any cause of action existing in his favor and against the plaintiff which arises out of the contract or transaction, and set forth in the plaintiff's petition as the foundation of the plaintiff's claim, or is connected with the subject of the action.

**3. Trusts—Constructive Trust—Money Acquired by Fraud.**

A person obtaining money by fraud acquires no title to it, but it is held by him, and all persons claiming under him with notice, in trust for the original owner.

**4. Same—Following Trust Fund.**

Equity will follow trust money through any number of transmutations, and restore it to the owner so long as it can be identified in its original or substituted form.

**5. Same—Trust Money Converted Into Negotiable Instrument.**

Where money impressed with a trust is converted by the wrongdoer into a negotiable instrument, such instrument will be impressed with the trust in the hands of such wrongdoer or his assignee with notice.

**6. Bills and Notes — "Purchase for Valuable Consideration."**

A plea of purchase for a valuable consideration without notice must be with the money actually paid or the consideration actually parted with.

(Syllabus by Dickson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by Joseph Pollack against W. Laurence Ragsdale, Bessie Mary Ragsdale and Leonard & Braniff, a corporation. From a judgment for the defendant Leonard & Braniff, plaintiff appeals. Affirmed.

Selby & Callihan, for plaintiff in error.

Snyder, Owen & Lybrand, for defendant in error.

Opinion by DICKSON, C. The parties will be referred to in this opinion as plaintiff and defendants, as they were designated in the court below.

On the 15th day of September, 1922, the plaintiff Joseph Pollack commenced an action in the district court of Oklahoma county against W. Laurence Ragsdale and Bessie Mary Ragsdale and Leonard & Braniff, a corporation, defendants.

The plaintiff alleged in his petition that, being the owner of certain real estate in Oklahoma City, on the 22nd day of August, 1922, through his agent, George W. Stephens, Jr., he entered into the following contract with the defendants W. Laurence Ragsdale and Bessie Mary Ragsdale:

"Oklahoma City, Oklahoma, August 22nd, 1922. Received from W. Laurence Ragsdale and Bessie Mary Ragsdale, $3,500 on purchase price of $9,000 for 1314 W. 10th, Oklahoma City, and note and mortgage on same, for $5,500, 8 per cent., payable in one year, deed to be made to Bessie Mary Ragsdale and delivered on payment of $78.10 insurance, abstract, etc. George W. Stephens, Jr., agent for Joseph Pollack."

That pursuant to said agreement the plaintiff did on the 29th day of August, 1922, execute a deed as contemplated by said agreement and delivered the same to George W. Stephens, Jr., to be delivered to the defendants Ragsdale upon compliance with their part of said agreement.

It is further alleged that on the 21st day of August, 1922, the defendants Ragsdale caused a forged deed, purporting to have

been executed on the 8th day of August, 1922. and conveying said real estate to the defendant W. Laurence Ragsdale, to be recorded in the office of the county clerk of said county, and on the same day caused to be recorded in said office a fraudulent mortgage purporting to have been executed by said W. Laurence Ragsdale August 10, 1922, by which the said W. Laurence Ragsdale pretended to convey said real estate to the defendant Leonard & Braniff, as security for the payment of a loan of $6,000. It is further alleged that the defendants Ragsdales are wholly insolvent. The plaintiff prayed that the said forged deed of August 8th, and said fraudulent mortgage of August 10, 1922, be canceled, and for judgment against the defendants Ragsdale for $5,-578.10.

On the 20th day of October, 1922, all of the defendants being in default, a judgment and decree was entered substantially as prayed in the petition. On the 3rd day of November, 1922, and during the same term of court at which the default judgment was taken, the court made an order vacating the same as to the defendant Leonard & Braniff. The material part of said order being as follows:

"Therefore, it is ordered and adjudged that defendant Leonard & Braniff be given, and said defendant is hereby given, leave to appear in this cause and file its answer, or other pleadings, and set up therein and have determined and adjudicated herein its equities and rights, not only as against defendants W. Laurence Ragsdale and Bessie Mary Ragsdale, but as against and between the plaintiff Joseph Pollack as well, notwithstanding said decree and judgment, which judgment and decree shall remain in full force and effect as between plaintiff and defendants Ragsdale, and is modified and vacated only as to defendant Leonard & Braniff, and not otherwise."

Pursuant to said order, said defendant Leonard & Braniff filed its answer and cross-petition, admitting that said deed of August 8, 1922, was a forgery, and that said mortgage of August 10, 1922, was fraudulent, and that the defendants Ragsdale were insolvent. By way of answer and cross-petition said defendant alleged that on the 10th day of August, 1922, the defendant W. Laurence Ragsdale applied to the defendant Leonard & Braniff for a loan of $6,000 and tendered to said defendant a mortgage upon said real estate as security therefor; that relying upon the representation of the defendant W. Laurence Ragsdale, that he was the owner of said property, the defendant Leonard & Braniff loaned to him the sum of $6,000, and accepted said mortgage as security for said loan; that said sum of $6,000 was procured from Leonard & Braniff by the defendant W. Laurence Ragsdale by fraud, and that the $3,500 delivered to the plaintiff's agent, under said agreement of August 22, 1922, was a part of the money received from it on said fraudulent mortgage and not the money or property of the said W. Laurence Ragsdale, but was in truth and in fact the money and property of the said defendant Leonard & Braniff. The defendant admitted the execution of the note and mortgage mentioned in said agreement of August, 22, 1922, but denied that the same were delivered, and alleged that the contract of sale and purchase set up in the plaintiff's petition had never been consummated, and prayed judgment against the plaintiff in the sum of $3,500, and for general relief.

The plaintiff filed a motion to strike out the defendant's answer and cross-petition upon the grounds that the matters and things therein set up were not permissible under the order vacating the original decree and permitting the defendant Leonard & Braniff to plead or answer. This motion was overruled and an exception reserved. The plaintiff then demurred to the answer and cross-petition, upon the grounds that the matters and things set up in said answer and cross-petition were not germane to the cause of action set forth in the plaintiff's petition, and that the allegations set forth in said answer and counterclaim were insufficient to constitute a counterclaim and cross-petition in favor of the defendant and against the plaintiff. The demurrer was overruled and an exception reserved.

The plaintiff filed a reply: (1) Denying the allegations of new matter set up in the answer and cross-petition; (2) pleaded the decree of October 3; (3) that the $3,500 paid by Ragsdale on the sale contract was by bank cashier's check payable to the plaintiff's agent, and the same was received by said agent in due course without notice of fraud of said Ragsdale.

The evidence on the trial, briefly summarized, is that early in the month of August, 1922, the defendant W. Laurence Ragsdale commenced negotiations with the plaintiff, through his agent, George W. Stephens, Jr., to purchase the real estate mentioned in the pleadings. During the time these negotiations were going on, the defendant Ragsdale forged a deed to said property purporting to convey the same from the plaintiff to the defendant W. Laurence Ragsdale, and representing himself to be the owner of said

property, by virtue of said deed, procured a loan thereon from the defendant Leonard & Braniff in the sum of $6,000, giving as security for said loan a mortgage based on said forged deed. The defendant Leonard & Braniff paid said loan to said Ragsdale by means of its check drawn against its deposit in an Oklahoma City bank. Ragsdale presented the check to the bank upon which it was drawn and with it purchased a cashier's check for $3,500, which check he delivered to the plaintiff's agent to be applied as a part payment for said real estate. On the same day, joined by his wife, a mortgage for $5,500 was executed covering said property, securing a promissory note for $5,500 in favor of the plaintiff, and a deed was drawn conveying said real estate to Bessie Mary Ragsdale and transmitted to the plaintiff in Los Angeles, Cal., for execution. This deed was executed by the plaintiff about the 29th day of August, 1922, and returned to said agent, and was received by him about the 3rd day of September. On the same day the deed was received by the agent the Ragsdales went to his office and examined the deed. The deed was never delivered, and the $78.10 insurance mentioned in the memoranda was never paid.

On the 14th day of September, 1922, said agent transmitted to the plaintiff $3,178.70, being the proceeds of said $3,500 cashier's check, less commission and disbursements. In this letter, the agent, after setting out the items of disbursements in connection with the deal, says.

"This shows the transaction by me as your agent regular.

"I also retain for the present all other papers, deed, mortgage, abstract and bill of sale. I had not delivered to him, and was not to deliver them until he paid me the unearned insurance and recording fees.

"This has almost put me in bed. I have worried no little. I don't see, however, where you can lose. Write me. I am acting with Mr. Selby, and will stand up for your rights in the matter."

The $3,500 cashier's check was deposited to Stephens' special agent's account, and the New York draft for $3,178.70 was paid for by check drawn by Stephens upon said special agent's account. It was admitted that on the 15th day of September, 1922, both the agent for the plaintiff and his attorney were advised of all the facts; that on the 16th day of September, 1922, the plaintiff was advised by telegram that the $3,500 paid by Ragsdale to Stephens was the property of the defendant Leonard & Braniff; that on the same day a letter was mailed to the plaintiff by Leonard & Braniff setting out all the details of the transaction.

On the trial, the court found the facts to be substantially as above stated, and rendered judgment for the defendant Leonard & Braniff and against the plaintiff for $3,178.70. A motion for a new trial was timely filed and overruled, and the plaintiff has appealed to this court and assigns as error: (1) The overruling of his motion to strike out. (2) The overruling of his demurrer. (3) The overruling of his motion for a new trial. (4) That the court erred in not rendering judgment in favor of the plaintiff upon the findings of fact.

The plaintiff contends that his motion to strike out should have been sustained for the reason that the matters set up in the answer and cross-petition are not authorized by the order of November 3, 1922. The order expressly authorized the defendant Leonard & Braniff to appear, file its answer or other pleading, and have its rights and equities adjudicated, not only against the Ragsdales, but against the plaintiff as well. Under this order, the defendant Leonard & Braniff was authorized to file any pleading it rightfully could have presented, had no such default judgment ever been entered against it. 34 C. J. 432, section 679.

The demurrer was properly overruled, the plaintiff sued to cancel the forged deed and fraudulent mortgage, and joined the defendant Leonard & Braniff as a defendant for the purpose of having cancelled the fraudulent mortgage. The answer of the defendant in effect admitted that the mortgage was fraudulent, but alleged that by means of said fraudulent mortgage the defendant Ragsdale procured $6,000 of their money, and that the plaintiff had in his hands $3,500 of the proceeds of said fraudulent mortgage, for which he had parted with no consideration, and with full notice of all of the facts. The claim set up by the plaintiff arose out of the transaction set forth in the petition and was necessarily connected therewith, and comes squarely within the provisions of section 274, Comp. St. 1921.

The third and fourth assignments will be considered together. It is conceded that the $6,000 check was obtained by Ragsdale by fraud, and it is well settled that in equity a constructive trust arises whenever one party has obtained money which does not equitably belong to him. Pomeroy's Equity Jurisprudence, vol. 3, section 1047:

"Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud. * * *" 26 R. C. L.

1232, sec. 78; Arnston v. First National Bank of Sheldon et al. (N. D.) 167 N. W. 760, L. R. A. 1918 F. 1038; Rollow v. Taylor, 104 Okla. 275 231 Pac. 224.

It is clear that said $6,000 was impressed with the trust, and that the cashier's check for $3,500, delivered to the plaintiff's agent, was a part of the proceeds of the $6,000 check, and was likewise impressed with the trust.

The sole question for determination, therefore, is, Did the plaintiff receive the $3,500 cashier's check and part with the consideration therefor, before he received notice of its trust character? It is perfectly clear that while this $3,500 check was delivered to the plaintiff's agent on the 22nd day of August, 1922, no contract of sale and purchase was consummated. The check and mortgage executed by the Ragsdales was delivered to the plaintiff's agent to be held by him in escrow until the execution and delivery of the deed by the plaintiff, for on the same day that the check was delivered the agent wired to the plaintiff that the money was paid to him subject to the approval of plaintiff, and the letter of September 14, 1922, shows that the agent still held in his possession all the papers in connection with the transaction, including the deed executed by the plaintiff.

On the 15th day of September, 1922, this suit was filed, the plaintiff's agent still having possession of the deed executed by the plaintiff, and the mortgage executed by the Ragsdales. At the time the suit was filed, the plaintiff's agent and attorney knew that the $3,500 check delivered to said agent was part of the proceeds of the $6,000 check fraudulently and feloniously obtained from the defendant Leonard & Braniff. The plaintiff still retained the title and possession of the real estate. He had delivered no part of the consideration for the $3,500 check. He was in no sense an innocent holder of said check for value, but it is contended that the plaintiff's agent transmitted to the plaintiff, by New York draft $3,178.70 on the 14th day of September, 1922, and on that date knew nothing of the forgery. Be this as it may, several days before the New York draft reached the plaintiff, he was fully advised that the money represented thereby belonged in fact to the defendant Leonard & Braniff. The question is not whether the plaintiff knew of the trust character of this money at the time his agent entered into the contract to sell the property; the question is, Did he acquire the knowledge before he parted with the consideration for the New York draft?

"Whenever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes a trustee for the original beneficiary." Pomeroy's Equity Jurisprudence, vol. 3, sec. 1048.

In order for the plaintiff to have recovered in this case, it was necessary for him to plead and prove, not only that he received the draft before he learned of its trust character, but further, that he parted with the consideration therefor before he received such notice.

"A plea of a purchase for a valuable consideration without notice, must be with the money actually paid, or else, according to Lord Hardwicke, you are not hurt.

"The averment must be not only that the purchaser had no notice at or before the time of the execution of the deeds, but that the purchase money was paid before notice. There must not only be a denial of notice before the purchase, but a denial of notice before payment of the money. Harrison v. Southcote, 1 Atk. 538; Story v. Windsor, 2 Id. 630. Even if the purchase money be secured to be paid, yet if it be not in fact paid before notice, the plea of a purchase for a valuable consideration will be overruled. Hardingham v. Nicholls, 3 Atk. 304." 7 Johns Ch. 65, 1 Am. D. 401.

"A purchaser without notice, to be entitled to protection, must not only be so at the time of the contract or conveyance, but at the time of the payment of the purchase money; this principle applies to the purchase of negotiable instruments like town bonds." Lytle v. Town of Lansing, 147 U. S. 59, 37 L. Ed. 78.

The plaintiff contends that the business between himself, his agent, and the Ragsdales was carried on through the medium of negotiable instruments, and for that reason the delivery of the $3,500 cashier's check to his agent without notice of any infirmities destroyed the equity of Leonard & Braniff. This contention would be sound if the plaintiff had actually transferred the title to the Ragsdales in consideration therefor. Having received the notice before parting with the consideration, the negotiability of the instruments becomes immaterial. Lytle v. Town of Lansing, supra; Dresser v. Mis-

souri & Iowa Railway Construction Co., 93 U. S. 92, 23 L. Ed. 815.

It is conceded that the $3,178.70 New York draft, delivered to the plaintiff by his agent, was a part of the proceeds and avails of the $6,000 check, obtained by fraud from the defendant Leonard & Braniff, and that the plaintiff never parted with anything in consideration therefor, and he holds the same in trust for the original owner. Newton v. Porter, 69 N. Y. 133, 25 Am. Rep. 152. The transmutation of the original $6,000 check into a cashier's check, and the cashier's check into the form of a New York draft, in no way alters the situation.

"So long as the trust property can be traced and followed into other property, into which it has been converted, that remains subject to the trust. The product or substitute has the nature of the original imparted to it. The depositing of trust money in a bank, although it creates the relation of debtor and creditor between the bank and the depositor, does not change its character, or relieve the deposit from the trust. It is not the identity of the form, but the substantial identity of the fund itself, which is the important thing." Third National Bank of St. Paul v. Stillwater Gas Co. (Minn.) 30 N. W. 440.

It is therefore recommended that the judgment appealed from be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 34 C. J. p. 432. (2) 34 Cyc. pp. 682, 684. (3) 39 Cyc. p. 172. (4) 39 Cyc. pp. 530, 548; anno. 18 A. L. R. 626; 26 R. C. L. 1353, et seq., 4 R. C. L. Supp. 1706. (5) 39 Cyc. p. 550.