**BRADY v. AMERICAN NAT. BANK OF OKLAHOMA CITY.**

No. 16659—Opinion Filed May 25, 1926.

Rehearing Denied Dec. 7, 1926.

**1. Banks and Banking—Lien of Bank on Deposit of Trust Funds.**

Where a trustee deposits funds, belonging to his cestui que trust, in his own name, in a bank, and the bank, without notice of the trust character of such deposit, extends credit to such trustee on the faith of such deposit, it may assert its lien against such deposit notwithstanding the trust character thereof.

**2. Same—Lien not Allowed Where Bank's Position not Changed Because of Deposit.**

Where a trustee deposits money, belonging to his cestui que trust, in a bank and no credit is extended on account of such deposit and the bank in no way changes its position by reason thereof, a lack of notice of the trust character of such deposit immaterial and the true owner may recover the amount thereof from such bank.

**3. Same—Funds Mingled in Trustee's Deposit — Presumption as to Trustee's Checks.**

Where a trust fund is deposited in a bank to the personal account of the trustee along with and mingled with his own funds in a single account, and afterwards the trustee draws checks generally upon said account, it will be presumed, so long as the balance remains equal to or greater than the trust fund, that the checks so drawn were intended to be cashed out of the trustee's individual funds, the presumption being that every man, until the contrary is proved, is deemed to have acted honestly.

(Syllabus by Dickson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Action by Emma F. Brady against the American National Bank of Oklahoma City, Okla. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Walters & Hilpirt and E. L. Fulton, for plaintiff in error.

Thos. H. Owen and Wilbur J. Holleman, for defendant in error.

Opinion by DICKSON, C. The parties will be referred to as plaintiff and defendant, as they were designated in the trial court.

The plaintiff commenced this action in the district court of Oklahoma county, for the purpose of recovering a judgment in the sum of $2,011.67, alleged by her to be a trust fund belonging to her and deposited in said bank by the F. B. Collins Investment Company. The case was submitted to the court upon an agreed statement of facts, which is substantially as follows: On the 12th day of May, 1923, and for ' number of years prior thereto, the defendant was a banking corporation, organized under the laws of the United States, doing business in Oklahoma City. On said date, and several years prior thereto, the F. B. Collins Investment Company, a corporation, was engaged in the farm loan business, with its principal office in Oklahoma City; was a depositor of said defendant bank, and was indebted to said defendant in the sum of money in excess of its deposit.

On April 4, 1919, Fred Renner and Nettie Renner, his wife, borrowed from the F. B. Collins Investment Company $2,000, for which they gave their secured note upon certain real estate. This note and mortgage was afterwards sold and assigned to the plaintiff. On the 26th day of April, 1923, and while the plaintiff was the owner of said note and mortgage, the makers hereof, desiring to pay off and discharge said indebtedness, and believing that the same was still held by the F. B. Collins Investment Company, transmitted by bank draft to said company $2,130.50, being the principal and interest then due on said note and mortgage. The investment company had already paid $118.83 by way of an installment of interest due on said note, so that the amount due the plaintiff on April 26, 1923, was $2,011.67. On April 26, 1923, the said investment company deposited said $2,130.50 draft to its credit in the bank, and on the same day drew its check against said deposit in favor of the plaintiff's agent for $2,011.67, and transmitted the same to the plaintiff's agent at Rochester, N. Y. Upon receipt of this check the plaintiff's note was canceled and the mortgage released. The check was deposited in a New York bank, and

on May 12, 1923, in due course presented to the defendant bank and payment thereon refused. At the time said draft was deposited the investment company had on deposit in the defendant bank other funds amounting to $13,925.15. On the 8th day of May, 1923, the defendant bank, having learned of the impending insolvency of the F. B. Collins Investment Company, credited its entire deposit, which on said date amounted to $11,545.94, upon its indebtedness to the bank. The defendant had no notice of the trust character of the draft until after the 8th day of May, 1923. The plaintiff never authorized the investment company to deposit said draft to its own credit in the defendant bank. From April 26th, until May 8, 1923, the F. B. Collins Investment Company continued to make further deposits in said defendant bank and to draw its checks thereon, which were paid. The amount of the investment company's balance between said dates never fell below $9,329.83. It was expressly agreed that no loans were made or credit extended by the defendant bank to the F. B. Collins Investment Company on account of said deposit, or after April 26, 1923, and that the defendant bank in no way changed its position on account of said deposit.

The trial court, upon these facts, found the issues for the defendant, and entered judgment dismissing the plaintiff's petition. The plaintiff's motion for a new trial was overruled, and she has duly appealed to this court. The assignments of error are: (1) That the court erred in overruling the plaintiff's motion for a new trial. (2) That the judgment is contrary to law and to the evidence.

The theory of the defendant is based on section 7434, C. O. S. 1921:

"A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business."

And it is argued that:

"The weight of authority is to the effect that, where the bank, in which funds in which third persons have an interest are deposited in the individual name of the depositor, has neither actual nor constructive notice as to the true character of the deposit, the bank may apply the deposit to the individual debt of the depositor."

And this contention is supported by a number of authorities, among which is Arnold v. San Ramon Valley Bank (Cal.) 194 Pac. 10-12, 13 A. L. R. 320, and note at page 327.

Whether a majority of the courts have adopted the rule contended for by the defendant in error is not important; such rule has not been adopted in this jurisdiction, and we think it is, wrong in principle. Section 7434, supra, gives a bank a lien on the property of its customer in the bank's possession, but there is no course of reasoning by which we can conclude that it was the intention of the Legislature by this section to give the bank a lien on the property of a stranger in the absence of any equities. It is true that, in many cases, funds belonging to a cestui que trust may be held by the bank to pay the indebtedness due it by the trustee, but the only just theory upon which this may be done is upon the doctrine that:

"When one of two innocent persons must suffer by the acts of a third, the one who enables the third person to occasion the loss must sustain it, and what one induces another to regard as true is the truth between them if the other has been misled thereby." Magnolia Petroleum Co. et al. v. Saylor, 72 Okla. 282, 180 Pac. 861.

And where A. permits B. to deposit his money in a bank to the credit of B., and the bank, relying upon the apparent ownership of B., extends credit to B., or parts with something of value, then, in equity, A., having induced the bank to regard his deposit as belonging to B., is estopped from claiming it.

In the recent case of Southwest National Bank v. Evans et al., 94 Okla. 185, 221 Pac. 53, this principle is recognized in the following language:

"1. The right of the plaintiff to exercise its banker's lien in the application of funds held by the bank to the payment of indebtedness owing by a depositor, presupposes: (a) That the fund deposited in the bank by the debtor was the property of the latter; (b) that the fund was deposited without restrictions and was not a special fund; and (c) an existing indebtedness then due and owing by the depositor to the bank.

"2. The rule rests upon the principle that it would be inequitable to permit a depositor to carry an open account or funds in the bank which induces the bank to feel secure in granting a certain line of credit, and then permit the debtor to apply the funds to a purpose other than the satisfaction of the indebtedness because the debtor had not expressly agreed to apply the same to the indebtedness owing to the bank.

"3. It would be equally inequitable to give effect to the banker's lien in applying the funds of a stranger placed in the bank by the depositor, in satisfaction of the indebtedness of the latter, when the bank had probable notice of the special character, and

therefore did not induce the advancement of the credit to which they were applied or cause the bank to alter its relation with the debtor."

In this case, it being expressly admitted that the defendant never extended credit to the F. B. Collins Investment Company on account of the deposit of the plaintiff's money therein by said company, and never in any way changed its position or did anything it would not otherwise have done, there is no theory upon which the defendant bank can hold title to this money against the true owner.

The defendant in error cites Gillette v. Liberty National Bank of Tulsa, 95 Okla. 76, 218 Pac. 1057, as authority supporting its contention. It is said in the Gillette Case:

"The weight of authority is to the effect that the bank can apply deposit to past due indebtedness of a customer, even though the deposit was in fact owned by another, if the bank had no notice of the true ownership."

The court then refers to Arnold v. San Ramon Valley Bank, supra. An examination of the Gillette Case, however, discloses that the question here presented was not involved. In the Gillette Case a sum of money belonging to Gillette was by mistake deposited to the credit of Pilcher. The bank undertook to assert a lien on this deposit for an indebtedness due it from Pilcher, and it was held that the relation of debtor and creditor did not exist between the bank and Pilcher as to this fund.

Our conclusion is, that where a trustee deposits money belonging to a cestui que trust in his own name in a bank, it remains the property of the cestui que trust, and that the lack of notice to the bank of the trust character of such deposit is unimportant, unless, by reason of the lack of notice and relying upon the depositor's apparent ownership of the fund, the bank has changed its position to its injury. The following authorities support this conclusion: Bolles on Banking, vol. 1, page 501, sec. 18; Shotwell v. Sioux Falls Savings Bank (S. D.) 147 N. W. 288; Union Stock Yards Nat. Bank v. Campbell (Neb.) 96 N. W. 608; and Fulton National Bank v. Hosier, 295 Fed. 611.

It is contended by the defendant in error that the withdrawals by the investment company from its deposit between April 26th and May 8th exceeded the deposit made by it during that period by several thousand dollars. And it is argued that the trust fund was dissipated by the F. B. Collins Investment Company. A sufficient answer to this contention is that the deposit at all times

remained far in excess of the trust fund, and, in these circumstances, presumption is that the withdrawals were the funds of the investment company:

"Where trust funds are deposited in the private account of the trustee, withdrawals by him will be presumed to be of his own funds." Cable et al. v. Iowa State Savings Bank (Iowa) 194 N. W. 957, 31 A. L. R. 748; 26 R. C. L. 1357.

The judgment appealed from is reversed, and the cause remanded, with directions to set aside the judgment and order dismissing the plaintiff's petition, and to enter judgment for the plaintiff in the sum of $2,011.67, together with interest thereon at 6 per cent. per annum from May 12, 1923.

By the Court: It is so ordered.