### FIDELITY NAT. BANK OF OKLAHOMA CITY v. COPELAND.

No. 18250. Opinion Filed April 16, 1929.

Rehearing Denied Sept. 10, 1929.

Stuart, Cruce & Franklin, for plaintiff in error.

A. M. Beets, O. K. Wetzel, and Walter Marlin, for defendant in error.

ANDREWS. J. The plaintiff in error was the defendant in the trial court and defendant in error was the plaintiff in the trial court. and they will be so referred to here.

Plaintiff offered in evidence an agreed statement of facts. The defendant offered in evidence the testimony of one witness.

The court rendered judgment on the agreed statement of facts and oral testimony and found generally in favor of the plaintiff and awarded the plaintiff the sum of $1,-492.12, with interest thereon at the rate of six per cent. per annum from the 10th day of May, 1923.

The testimony shows that the plaintiff made an application to the F. B. Collins Investment Company, a corporation, for a loan on his farm in Carter county in the sum of $1.500. The written application contained the following language:

"I do hereby appoint the F. B. Collins Investment Company. my attorney. irrevocably, for me. and in my name. place and stead to procure this loan from any person or corporation; principal and interest payable at such place as lender may direct; my said attorney being hereby authorized by me to receive and transmit my funds for the payment of interest or of principal on said loan as it may from any cause from time to time become due and payable."

The company had for a long time been engaged in the farm loan business in Oklahoma City. its business being that of a loan broker. that is, taking applications for farm loans and negotiating the loans to divers and sundry persons.

The loan company sold the plaintiff's note and mortgage and received therefor $1,489.25 by a draft payable to the loan company, which draft was deposited, with other items, by the loan company in the defendant bank, and on the same date the loan company sent the plaintiff a check for the sum of $1,490.12, which was the amount due to the plaintiff after deducting some expenses. When the check was presented to the defendant bank the account had been closed and the check was protested and $2 protest fee was charged. The plaintiff did not receive his money and brought this suit for the recovery thereof.

Before the transaction between the plaintiff and the loan company, the loan company had borrowed from the defendant bank the sum of $30,000, which was not due at the time the plaintiff's check was presented for payment. The $30,000 note provided:

"Said bank or the legal holder hereof is hereby authorized and empowered at any time to apply to the payment of any obligation, liability or liabilities, whether the same be due or not of the undersigned to said bank or to the legal holder hereof, whether now existing or hereafter contracted and whether or not then due or whether now held or hereafter acquired by said bank, all property, real and personal of every kind and description, including balances, credits, collections, moneys, drafts, checks, notes, bills or accounts, whether on hand or in transit of the undersigned."

That note was the first business transaction between the loan company and the defendant bank. The bank furnished the money and the loan company deposited it in the bank, and that account continued with additions and withdrawals to the time it was closed as hereinafter set out.

The defendant bank learned of the insolvency of the loan company and applied the balance on hand in the loan company's account to the indebtedness of the loan company to the bank, thereby closing the account. This happened after the issuance of the check from the loan company to plaintiff and before its presentation to the bank. At the time the account was closed there was a balance on deposit in excess of the amount of the check.

This case comes here on appeal on seven assignments of error which are presented in the defendant's brief under four heads, and we will discuss them in the order presented.

**1. The money sued for was not a trust fund.**

In Fidelity & Deposit Co. v. Rankin, 33 Okla. 7, 124 Pac. 71, this court held:

"If a party mixes trust funds with his own, the whole will be treated as trust property, except in so far as he will be able to distinguish what is his. This doctrine applies to money deposited in banks."

The loan application, the note and the mortgage all constituted one contract. Chas. E. Knox Oil Co. v. McKee et al., 101 Okla. 56, 223 Pac. 880. Under those instruments it is clear that the loan company, acting as agent for the plaintiff, procured for the plaintiff a loan out of which the plaintiff was entitled to $1,490.12. This sum was the property of the plaintiff. When the loan company deposited it in the defendant bank, it remained the property of the plaintiff. As was said in Pollock v. Leonard & Braniff, 112 Okla. 276, 241 Pac. 158:

"The depositing of trust money in a bank, although it creates the relation of debtor and creditor between the bank and the depositor, does not change its character, or relieve the deposit from the trust. It is not the identity of the form, but the substantial identity of the fund itself, which is the important thing"

—and

"Equity will follow trust money through any number of transmutations, and restore it to the owner so long as it can be identified in its original or substituted form."

There is no question but that this money was the property of the plaintiff and constituted a trust fund in the hands of the defendant bank.

**2. If the fund was a trust fund, notice to the bank is an essential element of plaintiff's case.**

This is fully answered by the statement that it is directly contrary to the decisions of this court.

The statutes of Oklahoma, section 7434, C. O. S. 1921, read:

"A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business."

This was adopted by this state from the territory of Oklahoma.

Section 2 of the Schedule of the Constitution provides:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not

locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

Section 7434, supra, is identical with section 3212 of the Statutes of Oklahoma 1893. That section was under consideration by the territorial court in Winfield National Bank v. McWilliams, 9 Okla. 493, 60 Pac. 229. In that case "the Winfield National Bank had no knowledge that the defendant claimed any interest in the check until after the Farmers & Merchants Bank had failed, and the proceeds of the check had been applied." That court said:

"We are of the opinion, that even though the Farmers & Merchants Bank was credited on the books of the Winfield National with the amount of the check, the defendant in error is entitled to recover the check, or the proceeds thereof, the same having been collected after the failure of the Farmers & Merchants Bank, unless the Winfield National parted with a present consideration without any knowledge as to who was the true owner of the check, or suffered balances due it from the Farmers & Merchants Bank to remain unpaid, and the check either wholly or partially influenced the extension of payment. (Wilson v. Smith, 3 Howard [U. S.] 763.)

—and in construing section 3212, supra, concluded:

"But this section only gives a banker a lien on the property belonging to the customer of the bank which is in the bank's possession. If the property is not, in fact, the property of the customer, then the bank has no lien, unless it received it for value, or by reason thereof extended payment on an existing debt."

After statehood this principle was under consideration in Shawnee Nat. Bank v. Wooten, 24 Okla. 425, 102 Pac. 714, and the court stated the issue to be as follows:

"The claim that the bank makes is that, having received it in accordance with the terms of its private contract with Beatty & Stubbs, and having applied it without actual notice of plaintiff's rights to pay the debt owed it by its customers, it could keep it after learning that it did not belong to its customers and did belong to plaintiffs. It is not claimed by the bank that it was misled by plaintiffs or delivered securities on account of having received this money; but it is in evidence that it was deposited just as other deposits were made, in this account under this contract, by these parties, that the same was largely overdrawn at the time it was deposited, and that it continued to be overdrawn up until the time when it was finally concluded a month or more afterward."

The court said:

"The situation presented by the contract and the foregoing evidence, to our minds, takes this case out of the rule declared in the case of Forbes v. First National Bank, supra, because of the special character of the transaction and of the fact that, under the contract between the defendant and its customers, it was not entitled to money of this character. Its receipt or payment was not within the contemplation of the parties. The verdict of the jury, under the uncontradicted evidence in favor of plaintiffs, was correct, and in fact the only one to which it would have been justified in coming."

This rule is particularly applicable to the facts in this case, for the testimony of the president of the defendant bank shows that the fund in this case was not one of those within the contemplation of the parties. That witness testified:

"We had no knowledge but what they told us, that they were paying out on loans as they made them and later sending the papers to the East and selling the paper, and said there was a period of usually from ten to twenty days before they got the money back and they needed this $30,000 for a revolving fund."

From this testimony it is clear that the bank never contemplated receiving anything other than replacement in the revolving fund of money used for the purchase of loans. The bank never at any time contemplated that it would receive the proceeds of loans belonging to borrowers and for which the loan company had never paid.

Neither Winfield Nat. Bank v. McWilliams, supra, nor Shawnee Nat. Bank v. Wooten, supra, has been overruled.

The failure of the F. B. Collins Investment Company resulted in three cases being filed in the district court of Oklahoma county and which were appealed to this court. The first of these decided was Zollinger et al. v. First Nat. Bank, 126 Okla. 182, 259 Pac. 141, decided April 6, 1926. In that case the trial judge sustained a demurrer to the evidence of the plaintiff. In this court the plaintiffs in error at the conclusion of their brief prayed that the case be reversed and sent back with directions to grant a new trial and submit the question of notice to the jury. This court in that case said:

"Here the bank sustained no loss by the deposit of the money that was to pay off the mortgages. Its loss, if any, was occasioned by its own act of loaning the Collins Com-

pany $40,000. on collateral security of a face value of more than $71,000, upon which they failed to realize the full amount of the note, according to the testimony of the vice president of the bank, and the plaintiffs did not enable the defendant to sustain any loss or induce it to regard as true that which was untrue, or mislead the bank when it made the loan to the Collins Investment Company. Under the great weight of authorities, if the bank had notice or knowledge of the method of business of the Collins Investment Company, and had more than sufficient funds to pay this check when presented, the bank would be liable, and the question of knowledge or notice being one of fact for the jury, the court erred in sustaining the defendant's demurrer to the plaintiffs' evidence, and the judgment of the court is therefore reversed and remanded, with directions to grant the plaintiffs a new trial."

In other words, the court gave the plaintiff in error all the relief that the plaintiff in error prayed for. We are unable to say what would have been the decision had a judgment for plaintiff been prayed for in this court.

In the brief of the plaintiff in error in this case, it is urged that the Zollinger opinion modifies the Brady opinion, but that is not true, for the opinion in Brady v. American Nat. Bank, 120 Okla. 159, 250 Pac. 1006, was not rendered until May 25, 1926, and by no construction can it be said that a prior opinion modified a subsequent one. In Brady v. American Nat. Bank, supra, the same trial judge had rendered a judgment for the defendant, and in this court the plaintiff in error in her petition in error prayed that the judgment be reversed, vacated, set aside and held for naught and that judgment be here rendered in favor of the plaintiff in error. Judgment was so rendered in this court. In that case the bank contended that the decision of the trial court was contrary to the holding of a majority of the courts. This court said:

"Whether a majority of the courts have adopted the rule contended for by the defendant in error is not important; such rule has not been adopted in this jurisdiction, and we think it is wrong in principle"

—and applied the rule adopted by it in Shawnee Nat. Bank v. Wooten, supra.

As was said in that case, this court will not count the decisions in order to determine which rule the majority follows. It is sufficient for us to say that the rule announced in Oklahoma is that stated in Brady v. American Nat. Bank, supra. As was said in that case:

"Our conclusion is that where a trustee deposits money belonging to a cestui que trust in his own name in a bank, it remains the property of the cestui que trust, and that the lack of notice to the bank of the trust character of such deposit is unimportant, unless, by reason of the lack of notice and relying upon the depositor's apparent ownership of the fund, the bank has changed its position to its injury. The following authorities support this conclusion: Bolles on Banking, vol. 1, page 501, sec. 18; Shotwell v. Sioux Falls Savings Bank (S. D.) 147 N. W. 288; Union Stock Yards Nat. Bank v. Campbell (Neb.) 96 N. W. 608; and Fulton National Bank v. Hosier, 295 Fed. 611."

It is true that First Nat. Bank v. Duncan, 127 Okla. 226, 260 Pac. 491, criticizes the rule in Brady v. American Nat. Bank, supra, and states that the decided weight of authority is to the contrary, but it does not overrule Brady v. American Nat. Bank, supra. The plaintiff therein is granted the same relief as though the rule in Brady v. American Nat. Bank, supra, had been applied.

If First Nat. Bank v. Duncan, supra, is in conflict with the rule announced in Brady v. American Nat. Bank, supra, the same is to that extent overruled.

It is urged by the plaintiff in error that banks cannot operate under this rule, in answer to which we call attention to the fact that banks are operating under such a rule in South Dakota, Indiana, Michigan, Minnesota, and other states.

But, be that as it may, it is not for this court to broaden a statutory lien. As was said by this court in Harriss v. Parks, 77 Okla. 197, 187 Pac. 470:

"Generally a lien can only be created with the owner's consent; that is, by a contract, expressed or implied, with the owner of the property or with someone by him duly authorized, or without his consent by the operation of some positive rule of law, as by statute. 25 Cyc. 663.

"Statutory liens, however, have been looked upon with jealousy, and generally will only be extended to cases expressly provided for by the statute, and then only where there has been a strict compliance with all the statutory requisites essential to their creation and existence. 25 Cyc. 662."

If the rule herein announced works any injustice, it is due to the actions of the Legislature rather than that of this court. Section 7434, supra, limits the lien of the bank to the property in its hands "belonging to a customer." If that statute is not sufficiently broad to permit banks in Oklahoma

to operate, then it is for the Legislature to broaden it rather than for this court by judicial opinion to legislate for relief of the situation. Certainly this court should not construe the language, "belonging to a customer," to include property that does not belong to the customer but that is held by the customer in trust for another.

### 3. Was there notice to the defendant bank of the trust?

We deem it unnecessary to pass upon the effect of the evidence with reference to this question, as we think it is immaterial, under the facts shown, whether there was any notice to the bank or not. The evidence shows that the bank made this loan of $30,000; that before the loan matured plaintiff's money was deposited in that bank by the loan company in the name of the loan company; that the bank never extended any credit, changed its position, parted with anything or suffered any detriment by reason of the plaintiff's money having been deposited in that bank. Under these conditions it is immaterial whether the bank had notice or not.

### 4. The bank relied upon this deposit.

There is no evidence in this record in support of this heading.

### 5. The proceeds of the check had been dissipated.

An examination of the evidence discloses that the balance in this account from the time of the deposit of this fund until the account was closed out by the bank was always in excess of the amount of the deposit. The withdrawals are presumed to be from the funds of the depositor, leaving, if possible, the trust fund intact. Brady v. American Nat. Bank, supra. In Kansas Flour Mills Co. v. New State Bank, 124 Okla. 185, 256 Pac. 43, the rule announced was:

"Where trustee commingles his beneficiary's money with his own, and then invades the common store, he will be presumed to have used his own money first; the law presuming that he does right rather than wrong."

And in First State Bank of Bristow et al. v. O'Bannon, 130 Okla. 206, 266 Pac. 472, the court said:

"Where a trustee commingles his beneficiary's money with his own, and then invades the common store, he will be presumed to have used his own money first; the law presuming that he does right rather than wrong."

The plaintiff herein authorized an agent engaged in the brokerage business to procure for him a loan on his land. The agent procured the loan and deposited the proceeds in its own account in a bank to which it was indebted. It at once sent the plaintiff a check on that account for the amount due the plaintiff. Before that check was presented to the bank for payment, the bank learned of the insolvency of the loan company, closed the loan company's account and credited the amount therein to the amount the loan company owed the bank, which was not yet due. The bank did not change its position by reason of the deposit of this trust fund, and suffered no detriment by reason of said deposit. The amount of the deposit at the time the account was closed was in excess of the trust fund. The fact that the bank knew nothing of the trust fund is immaterial. The plaintiff is entitled to recover, and the judgment of the trial court is affirmed.

LESTER, V. C. J., and HUNT, CULLISON, and SWINDALL, JJ., concur.

MASON C. J., and CLARK, RILEY, and HEFNER, JJ., absent.