## ORR et al. v. ROSE.

No. 22560. Oct. 30, 1934.

Blanton, Osborn & Curtis, for plaintiffs in error.

Roy Glasco, for defendant in error.

PER CURIAM. This is a suit by C. S. Rose, as plaintiff, against N. F. Orr and Annie Orr, husband and wife, defendants, to recover a money judgment and to impress a lien on 30 acres of land for the amount of the judgment. The evidence will be viewed in the light of the rule that where there is a conflict in the evidence, the finding of the trial court on the point will not be disturbed on appeal unless such finding is against the clear weight of the evidence. The facts out of which the controversy arose are substantially these: Defendant N. F. Orr desired to purchase 30 acres of land, which was formerly the allotment of a full-blood Mississippi Choctaw Indian. The land adjoined land occupied by Orr as his homestead, and was being offered for sale in a partition proceeding. Prior to completing the purchase of the land, Orr agreed to sell Rose an oil and gas lease on the land for $750, and intended to and did at least use a part of the lease money to pay the purchase price for the land. Orr represented that the land was not leased for oil and gas, and the abstract of title, which was examined by an attorney for Orr, did not show the existence of an oil and gas lease. The deed to the land was procured by Orr sometime about midday, filed for record about 2:00 p. m., and the oil and gas lease was given and paid for by Rose about 4:00 p. m. of the same day. Orr borrowed $650 from the bank, which he deposited in the bank to his account, together with the $750 received from Rose. The checks drawn in payment of the land, amounting to $1,200, were paid out of these deposits. A short time after this transaction, it was discovered that the Indian allottee had made an oil and gas lease on the land about three years prior thereto for a term of ten years, which lease had been sold under supervision of the Department of the Interior, approved by it, filed in the office of the Union Indian Agency at Muskogee,

and was still in force, but not recorded in the office of the county clerk of McClain county. Rose then called upon Orr to make restitution, but Orr was without money to repay Rose, and was insolvent, and claimed the land purchased as a part of his homestead.

In the trial of the cause the court upon request of counsel for Orr made special findings of fact and conclusions of law. All findings were favorable to plaintiff, and judgment was rendered for the sum of $750, with interest at 6 per cent. from May 1, 1930, and attorney's fee of $100, and plaintiff was given a lien upon the land involved for the amount of his judgment, subject to a first mortgage in the sum of $650 in favor of the First National Bank of Washington. The lien was allowed upon the theory that Rose had furnished a portion of the purchase price of the land, and that defendant had practiced a constructive fraud upon plaintiff which created a constructive trust. It was admitted in the trial court, and not denied here, that Rose was entitled to judgment for $750, but the controverted question was and is whether or not he was entitled to a lien upon the land for his money.

Counsel for Orr sets out nine separate assignments of error as to why the judgment should be reversed, but briefs them under three propositions, viz.: First, that the evidence does not warrant the finding of a resulting trust; second, that the evidence does not establish a constructive trust upon which a lien may be created; and third, that if plaintiff is entitled to a lien for any amount, the lien could not exceed the sum of $550 and a reasonable attorney's fee.

Special finding No. 7 of the trial court is to the effect that a constructive fraud was practiced upon plaintiff creating a constructive trust, and that by reason thereof plaintiff was entitled to a lien on the land for the amount of money paid by him. There is no finding that a resulting trust arose by reason of the transactions had. We shall, therefore, not discuss the question of a resulting trust, but shall go to the question of whether the trial court was justified under the evidence in finding that a constructive trust arose, entitling plaintiff to an equitable lien upon the land for the amount paid by him for the oil lease, which was void.

Counsel for Orr says there can be no constructive trust because there is neither pleading nor proof to the effect that Orr was guilty of intentional fraud in selling Rose an oil and gas lease on the land when, in fact, the land was already leased. It is conceded that Orr did not know the land had been leased for oil and gas, and, therefore, did not perpetrate an intentional fraud upon Rose; but actual or intentional dishonesty is not an essential element of constructive fraud. The absence of an intent to deceive is the thing that distinguishes constructive fraud from actual fraud. 26 C. J. 1061. A constructive fraud, under proper circumstances, is ' sufficient for the declaration of a constructive trust by a court of equity. Pomeroy's Equity Jurisprudence, vol. 1, p. 155; Cassidy v. Horner et al., 86 Okla. 220, 208 P. 775; 12 R. C. L. 345. A constructive trust is the creature of equity, and is designed to relieve against unfair situations where one party will suffer a detriment without the interposition of equity. 26 R. C. L. 1233 divides constructive trusts into three classes: Those that arise from actual fraud, those that arise from constructive fraud, and those that arise from some equitable principle independent of fraud. Constructive trusts are declared by a court of equity in order that it may lay its hands on the property, and deal with it in some way to restore the injured party to his rights. In the case of Richards et al. v. Lowery, 135 Okla. 243, 275 P. 335, in the body of the opinion it is said:

"It is the general rule that, where one obtains the legal title or right to property by actual fraud, undue influence, taking advantage of one's weakness, or necessities, or through any other similar circumstances, although not amounting to fraud, which renders it unconscientious for the holder of the legal title to retain it, and enjoy the beneficial interest, equity will impress a constructive trust on the property so acquired in favor of the person who is equitably entitled to the same. And in such cases equity has jurisdiction to reach the property in the hands of any one except an innocent purchaser for value, who may take it relieved from the trust. * * *"

The subject is dealt with by many of the text-writers and many of the judicial decisions. A more apt treatment is contained in volume 1 of Pomeroy's Equity Jurisprudence, page 155, which is in part as follows:

"All instances of constructive trust may be referred to what equity denominates fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations. If one party obtains the legal title to property, not only by

fraud or by violation of confidence or fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

While under the evidence there may be some conflict as to whether Orr and Rose both intended that the $750 paid for the lease would be used as a part of the fund to pay for the land being purchased by Orr, there certainly is positive and convincing evidence that such was the intention, and it is uncontradicted that Orr did use approximately $550 of the lease money to pay for the land. The fact that the lease was not actually executed and the lease money paid until a few hours after Orr received his deed to the land is of no consequence, since there is ample proof that the lease money was to be used in paying for the land, and ample proof that it was deposited in the bank, and a portion thereof used to pay the checks which had been given in payment of the land. Under such circumstances, and in view of the further fact that Orr was insolvent and claimed the land as his homestead, it would certainly be inequitable and unconscientious to permit Orr to hold and enjoy the land claiming protection provided by law. To the extent of the amount of the lease money which went into the purchase of the land, equity will declare a constructive trust in favor of Rose; and will restore to him such money so far as it is possible to do without injury to innocent parties. Pollack v. Leonard & Braniff, 112 Okla. 276, 241 P. 158. Rose not having furnished all of the money to purchase the land, and there being a mortgage thereon in favor of an innocent party, it seems that the trial court did the most practical thing by decreeing a lien, and ordering the property sold, subject to the mortgage.

It is next contended that even if plaintiff is entitled to have the land impressed with an equitable lien in the form of a constructive trust, the amount of such lien cannot exceed the sum of $550. With this contention, we agree. The evidence shows that the land cost $1,200; that Orr had a small balance in his account in the First National Bank of Washington, but no definite amount stated. The evidence further shows that the $750 received from Rose was deposited in this account, and that Orr borrowed an additional $650 from the bank, which he deposited in the account. He then drew checks on the account to pay for the land, and what happened with the balance of the money in his account is not shown. If the trust theory, which we have heretofore pointed out, is to be followed, the defendant must be indulged the presumptions which equity accords one under such circumstances. If one commingles trust funds with his own, and then draws on the common fund, he will be presumed to have first used his own money so long as it lasts, the law presuming that he acts honestly until the contrary is proved. Brady v. American National Bank, 120 Okla. 159, 250 P. 1006; Fidelity National Bank v. Copeland, 138 Okla. 19, 280 P. 273; Kansas Flour Mills Co. v. New State Bank, 124 Okla. 185, 256 P. 43. It will, therefore, be presumed that in paying for the land Orr first used the $650 borrowed from the bank for that purpose, and then $550 of the lease money secured from Rose. As to the remaining $200 of the money paid by Rose, he is only a common creditor, and must rely upon his money judgment for that amount.

Accordingly, the judgment of the trial court is modified so as to allow a lien upon the land in favor of Rose in the amount of $550 only, and an attorney's fee of $100, and in all other respects the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys A. L. Jeffrey, Malcolm McKenzie, and G. A. Paul in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Jeffrey, and approved by Mr. McKenzie and Mr. Paul, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.