## MISSOURI STATE LIFE INS. CO. et al. v. WHISMAN et al.

No. 26467. Sept. 28, 1937.

Rehearing Denied Nov. 9, 1937.

Hoyt & Stephens and E. J. Gilder, for plaintiffs in error.

James M. Hays, for defendants in error.

DAVISON, J. This is an appeal from a judgment of the district court of Okmulgee county in favor of the defendants in error and against the plaintiffs in error. The parties will be referred to as plaintiffs and defendants as they appeared in the trial court.

The plaintiffs sued the defendant Missouri State Life Insurance Company for an alleged breach of warranty contained in a deed to land executed by the defendant company to the plaintiffs. The breach is based upon the fact that at the time of the execution of the deed there existed an easement for a highway, a pipe line, an electric line, and a telephone line; and for shortage of acreage conveyed. The plaintiffs claimed that they had purchased the land by the acre and that there was a shortage in acreage.

The defendant filed its answer and cross-petition, admitting the execution of the deed, denying that there was any understanding as to purchase of the land by the acre. The answer further admitted the easement for a highway to Okmulgee county made by defendant's predecessor in title, but alleged full knowledge of same on part of defendants, who were in possession of the land prior to the execution of the deed, and alleged that same did not amount to a deficiency in title. Defendant alleged in its cross-petition that the deed was executed pursuant to a contract of purchase, and that in drawing the deed certain exceptions as to coal mines and coal underlying the property and equipment connected therewith, and of the right of way of pipe lines, were omitted, and that the omission was through mutual error and mistake of the parties, and asked that the deed be reformed to comply with the sales contract. The cross-petition further alleged the existence of the promissory note and mortgage executed by plaintiffs evidencing the purchase price of the land, showing credits thereon and balance then due and the breach of the terms of same and asked for judgment and foreclosure for the balance due and for attorney fees.

On motion of plaintiffs, the trial court struck part of defendant's answer. Plaintiffs then filed their reply and answer to the defendant's answer and cross-petition, and denied the execution of the sales agreement providing for certain exceptions to be made in the deed relative to the coal mine, oil and gas lease, and right of way of pipe lines. It was alleged that plaintiff W. C. Whisman was practically blind; that the sales agreement read to him and signed by him contained no exceptions to be placed in the deed relative to coal mine right of way and oil and gas leases, and that defendant's attempt to predicate any right thereon is a fraud upon the rights of the plaintiffs. Plaintiffs further denied that any sum was due and payable to defendant on their note and mortgage and alleged that the suit was prematurely brought.

On application of General American Life Insurance Company, it was made a party defendant, and filed a supplemental cross-petition showing the facts of a transfer to it of the interest of defendant Missouri State Life Insurance Company, including the note and mortgage sued upon and

the present ownership of the same. Judgment was rendered for plaintiffs, and the defendants appealed. This appeal is by both defendants from a judgment rendered against them jointly. Many assignments of error are presented.

It is first contended by defendant Missouri State Life Insurance Company that the trial court erred in striking a portion of their answer. The portion of the answer which was struck and here complained of, alleged, in substance, that in 1927 the International Life Insurance Company was the owner of the land in controversy and executed a lease on same to plaintiff W. C. Whisman, whereby he and his coplaintiff lived on and had possession of the lands in controversy from September, 1927, on during the calendar year of 1928, and during the time the deed was executed; that the existence of the road was well known to each of the plaintiffs; that there is no deficiency in the deed on account of the highway for the reason that same purports to and does grant only an easement over the right of way; that plaintiffs became the owner of the land in said roadway subject only to the easement, which provides that in the event it ceases to be used as a roadway, all interest of the county shall revert to said owners.

We are unable to determine, either by the record or the briefs in the case, just why the court struck that portion of the defendants' answer, and we think the court committed error in so doing. The question of whether or not easements granted by a predecessor in title and open and notorious in nature and within the full knowledge of the purchasers of land might or might not so affect the rights of the owner of the land as to be a basis for a breach of warranty, was not only a very important question for consideration in behalf of the defendant, but was clearly within the issues presented by the pleadings and exhibits filed by the plaintiffs. This cause was tried to a jury, who were not trained in distinguishing between incumbrances that affect title to land as distinguished from easements which often affect only the physical condition of the property. That defense became even more important to the defendants when the plaintiffs were allowed, over the objection of the defendants, to introduce testimony relative to the detrimental effects of the easements on the land styled as "encumbrances on the land." The permitting of the introduction of this testimony is assigned as plaintiffs in error's second contention of error. Quoting from the testimony (C. M. 84) of the plaintiff:

"Q. Mr. Whisman, you may state whether or not there is a highway right of way on that land—state if any encumbrances on that land."

Over the objections of the defendants, plaintiff was allowed to answer:

"A. Well, there is a state highway right of way across the land, there is two pipe lines running across the south side; two pipe lines across the east side; there is a telephone line runs through by the house, goes zig zag, goes right in front of the house; there is an electric light line right of way—runs zig zag across the place, out in the field, out where we cultivate, have to cultivate around the posts, up to the telephone line. * * *"

Such testimony was clearly incompetent and could serve no other purpose than to prejudice the minds of the jury. It was an attempt to prove the detrimental effect of easements on the land, described as encumbrances, by oral testimony. Some or all of the easements might or might not have been placed on the land with the consent of the owner at the time and for his sole benefit and use. An easement granting certain rights over land is an interest in the land and cannot be created by parol grant, but requires a deed or prescription. Catterall v. Pulis, 137 Okla. 86, 278 P. 292; section 9661, O. S. 1931; Emerson v. Bergin (Cal.) 18 P. 264. If such easements existed, the written evidence of same was the best evidence.

The plaintiffs were allowed, over the objection of the defendants, to introduce plaintiffs' witness E. M. Hickman, who testified that the damage to the property by the encumbrance with a pipe line would be $1 to $1.25 per rod. Plaintiff W. C. Whisman was allowed to testify, over objections, that the damage to the land by the telephone right of way was $2 per rod. Such testimony was merely conclusions of the witness and did not furnish any proper basis for determining damages resulting from easements. Section 9967, O. S. 1931, provides:

"The detriment caused by the breach of

a covenant or seizin, or right to convey, of warranty, or of quiet enjoyment, in a grant of an estate in real property, is deemed to be:

"First. The price paid to the grantor, or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore, at the time of the grant, to the value of the whole property."

This provision of the statute has been cited and approved in Hammert v. McKnight, 132 Okla. 14, 269 P. 289, and seems to be an accepted rule in other jurisdictions. The testimony of the witness as to the amount of damages caused by easement for pipe line and telephone line was misleading to the jury in furnishing no basis for measure of damages, if any was actually due, and was prejudicial to the rights of the defendant.

The only written grant of a pipe line right of way introduced in evidence was made to the Texas Pipe Line Company of Oklahoma. The plaintiff W. C. Whisman testified that this pipe line was located on the south side of the land. There is no evidence of any written pipe line grant on the east side. There is no evidence of written grants of either electric light or telephone right of way over this land. Since the conveyance of an easement must be executed with formalities essential to conveyance of interest in land (19 C. J. 906, sec. 92 b.,) and section 9661, O. S. 1931, requires conveyance of interest in land to be in writing, we must conclude that the land is not encumbered with a pipe line right of way on the east side, nor a telephone nor electric light right of way over any part of same, and that the only grant of right of way was that of the Texas Pipe Line Company, for which, under proper testimony, reasonable damages might be allowed. The fact that these other lines have been placed on the land without authority does not create encumbrances on the land so as to affect warranty. The plaintiffs may require their removal or demand compensation for their continuance.

From the testimony introduced relative to damages for the various easements upon the land, the jury rendered a verdict against the defendants in favor of the plaintiffs in the sum of $1,265.40, based upon encumbrance by pipe line of 456 rods at $1.35 per rod, $615.60; for telephone line encumbrance of 75 rods at $1.35 per rod, $101.25;

for electric line encumbrance of 80 rods at $1.35 per rod, $108, and encumbrance of the highway of 6.61 acres at $60 per acre, $396.60. A large portion of this sum was for damages found to result from easements which were never proven to exist. There was no competent evidence to warrant such finding of the jury. There was no evidence to show the amount, if any, the market value of the land had been reduced by reason of the alleged encumbrances. There being no proof of the proper measure of damages, the court erred in overruling the defendants' demurrer to testimony relative to such damages.

It is next contended that the trial court erred in excluding evidence, offered by the defendants, relative to pipe-line rights of way being intended to be excepted from the warranty in the deed as shown by the terms of the sales agreement. It was alleged in the defendants' answer and cross-petition that such omission from the deed was a mutual mistake of the parties, and they asked that the deed be so reformed as to express the intention of the parties. The defendants were allowed to introduce into the record the sales agreement showing the exceptions as alleged in the answer, but the court refused to allow the introduction of testimony relative to what the deed was to contain and what had been mutually omitted therefrom. In order to ascertain if certain exceptions intended by both parties to be placed in the deed had been omitted from the deed, the deed and the sales contract should have been construed together as one instrument, and this is true whether they were written at the same time or not. The construing of the instruments is a question of law for the court and oral testimony was not necessarily proper, unless extraneous testimony was necessary, which would raise a question of fact for the jury. Brake v. Blaine, 49 Okla. 486, 153 P. 158; Chas. E. Knox Oil Co. v. McKee, 101 Okla. 56, 223 P. 880; Fidelity Nat. Bank of Oklahoma City v. Copeland, 138 Okla. 19, 280 P. 273.

The public highway complained of by the plaintiffs as an encumbrance on the land was a public highway running near the residence of the plaintiffs and through the premises where plaintiff had lived for more than a year prior to the purchasing of the land. The record shows the road ran by a coal mine and was used in marketing the

coal and from which the plaintiffs were receiving a benefit. It becomes a question, under these circumstances, as to whether or not such 'a highway, containing only an easement on the land, is such an encumbrance on the land as would constitute a breach of covenant against encumbrances in a deed and whether damages therefor should be considered in any event. We have not been able to find where this court has given expression on this point. In Stuhr v. Butterfield (Iowa) 130 N. W. 897, the deed covenanted that the premises were "free from liens and encumbrances except a certain mortgage." A drainage ditch had previously been constructed, and occupied in one place 75 feet and in another 150 feet in width through the farm, amounting to 14 acres. That court held:

"That a drainage ditch had been ordered by the board of supervisors to be excavated through land did not constitute a breach of a covenant against incumbrances in a deed thereafter given"

—and said:

"The taking of the right of way for a railroad is of no advantage to the land on which the burden is imposed. * * * But highways 'are established because essential to the enjoyment of the land on which they constitute an easement. The advantage of a particular road to the owner of the land may be doubtful in some instances, but it is established 'as a part of a system, designed to be of use and value to the owner as well as all others out of whose lands the highways are carved."

In Harrison v. Des Moines & Ft. Dodge Ry. Co. (Iowa) 58 N. W. 1081, that court held:

"A public highway through lands conveyed, in use, and known to the parties at the time of the conveyance—is not an encumbrance, so that its existence constitutes a breach of the covenants of warranty"

—'and said:

"The network of highways over the state is the means by which the owners of lands are enabled to reach the churches, schools, and markets of their respective communities; and. when the owner of a tract of land is disconnected from the system of highways, he becomes 'a petitioner to the public. in which he asks that such an easement be created. and his lands be made servient thereby. By this system of highways the landed estates become mutually servient, and in a way that the easements are mutually advantageous, and the respective values are enhanced thereby. Such an easement is not an incumbrance."

Courts from other jurisdictions which support these holdings may be found in Goodman v. Heilig (N. Car.) 72 S. E. 866; Van Ness v. Royal Phosphate Co. (Fla.) 53 So. 381; Patterson v. Jones (Ky.) 32 S. W. (2d) 408; Ireton v. Thomas. (Kan.) 113 P. 306.

From the testimony in this case, showing the plaintiffs' knowledge of the existence of the highway when the land was purchased, also the apparent value to be obtained by the plaintiffs because of its existence, we are of the opinion that the highway complained of was not such an encumbrance on the land as would constitute a breach of covenant against encumbrances in the deed to the plaintiffs.

Defendants further contend that the court erred in refusing various instructions to the jury offered by defendants relative to ascertaining damages. It is unnecessary to consider this contention. There was no competent evidence before the jury upon which damages, if any existed, could properly be based as to any of the encumbrances complained of.

For the reasons herein stated, the judgment of the court is reversed and the cause remanded, with instructions that the judgment be set aside and a new trial granted.

BAYLESS, V. C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.