DeMOSS et al. v. RULE.

No. 31440.     Oct. 17, 1944.

*152 P. 2d 594.*

Swank & Swank, of Stillwater, for plaintiffs in error.

Irving D. Moss (of Sargent & Ross), of Newkirk, for defendant in error.

RILEY, J. This is an action commenced in the district court of Noble county by defendant in error, herein referred to as plaintiff, against plaintiffs in error, to recover a money judgment and have the same declared a lien upon certain real estate.

Plaintiff and defendant Dora DeMoss are brother and sister, and the only children of George Rule, who is past 81 years of age. Plaintiff's petition, in substance, alleges that about February 12, 1941, defendants obtained from the father the sum of $2,500, which was the property of plaintiff and which defendants well knew, and that defendants thereby became liable to plaintiff for the return of the money; that defendants have refused and neglected to repay any part thereof. That the manner in which defendants obtained said money was: That some time in the latter part of 1940 George Rule, the father, made known to plaintiff and defendants that he had $5,000 which he intended to give to plaintiff and defendant Dora DeMoss, $2,500 to each, with the express desire that the gift, when made, should be invested in real estate; that soon thereafter defendants entered into negotiations with Sam Myers, the owner, for the purchase of the land here involved and particularly described; that thereafter defendants reported orally to plaintiff that they had agreed with Myers for the purchase of said farm for the sum of $9,000, of which $2,800 was to be paid by the assumption of a then existing mortgage indebtedness to the State School Land Commission, the balance, $6,200, to be paid in cash; that the proposed purchase and the terms thereof were made known to the father and were satisfactory to him, and that he expressed a willingness that

said proposed gift money should go into the purchase of said land; that about January 1, 1941, it was orally agreed between plaintiff and defendants that plaintiff's share of the proposed gift, namely, $2,500, should be used by defendants in the purchase of said farm, but before obtaining or securing the $2,500 for such purpose, defendants were to execute and deliver to plaintiff a demand promissory note in the sum of $2,500, with interest thereon at the rate of 4% per annum, payable annually, which said note should bear an endorsement in substance that "It is agreed that this note shall not be presented for payment except upon the sale of the land or the settlement of mother's estate, whichever comes first"; that it was the understanding that the land referred to therein was the land here involved, and that the "mother's estate" referred to therein was the estate of the mother of plaintiff and defendant Dora DeMoss, who is yet living; that in January, 1941, defendants orally informed plaintiff that the preliminary matters relative to the purchase of said farm were then about closed, and that it would be necessary that they go to Stillwater in the near future to close the deal, and that defendants requested that plaintiff arrange to be present in order that plaintiff might then obtain the $2,500 to use as a part of the purchase price; that plaintiff was then working in or near Muskogee, Okla., and could not conveniently be present in Stillwater to close the deal, but plaintiff, desiring to accommodate defendants and to avoid delay in the matter of consummating the purchase of said land, and relying upon the family relations, and trusting defendants to carry out their argreement, orally agreed with defendants that they, defendants, would, before securing from the father the $2,500 which the father proposed to give plaintiff, execute and deliver the note referred to; that on or about the 12th day of February, 1941, defendants

" . . . did make said purchase of the above described land on the terms as set forth at Stillwater, Oklahoma, and

that they took the said George Rule with them to Stillwater in order that he might there deliver to them the gift intended for the defendant, Dora DeMoss, and for this plaintiff as hereinabove mentioned. That before turning over said gift totalling $5,000.00 the said George Rule orally inquired of said defendants as to whether the necessary instruments and papers had been executed by them for the protection of the plaintiff upon his share of $2,500.00, and said defendants orally assured him that such had been done, and believing the statement to be true and relying thereon the said George Rule then turned over to said defendants the full sum of $5,000.00, being the $2,500.00 intended for Dora DeMoss, and the $2,500.00 gift intended for plaintiff, and the same was received by the defendants well knowing that the said note hereinabove referred to had not been executed or delivered to this plaintiff, and well knowing that the father would not have delivered said $2,500.00 to them if he had known no note or other instruments had been executed for plaintiff's protection."

And:

" . . . that although frequent demands have been made said defendants have failed, refused and neglected to make a note in the manner and form above referred to or any other form and have wholly repudiated their promise to pay this plaintiff and deny they owe him anything or have any of his property but have used said money as a part of the purchase price of the above described real estate upon which they now reside."

The prayer was for judgment against the defendants for $2,500, with interest at 6% from February 12, 1941, and for a decree impressing a lien upon the land so purchased to secure such judgment, and for an order foreclosing such lien, and for the sale of the land to satisfy the judgment, and for attorney's fee.

The answer of defendants, after a lengthy statement as to how the father, George Rule, obtained the $5,000, further alleged that the father, George Rule, had expressed the desire to advance to his daughter, defendant Dora

442

DeMoss, $5,000 so as to make it possible for her to purchase the farm in Noble county described in plaintiff's petition, the purchase price of which was $9,000. The answer then alleged:

"Defendants aver that the plaintiff, George D. Rule, first conceived the plan whereby it would be agreed between the father and mother and the brother and sister that the said George Rule would advance the sum of $5,000.00 to be applied on the purchase price of said land; that the title to said land should be vested in the said Dora DeMoss; that she would assume a School Land mortgage thereon in the sum of $2,-800.00; that the said Dora DeMoss would use $950.00 that had been given her by her mother, Orpha Rule, and that she, the said Dora DeMoss would advance $250.00 of her own money; and it was further agreed that the said George D. Rule should have the share of the defendant, Dora DeMoss in the Mother's estate, to the extent of $2,-500.00, and that the said George D. Rule would acquire his one-third of the mother's estate, plus the $2,500 also to come out of the mother's estate at the time the mother's estate was settled."

The answer specifically denied that there was ever an agreement that defendants were to give plaintiff a note for the $2,500 or that said $2,500 was to bear interest, and then alleged:

" . . . after said land was acquired as aforesaid, after they had moved on to the land and commenced farming operations they first-heard of the contention that a note was to be executed by the defendant, Dora DeMoss, to the plaintiff, George D. Rule, in the sum of $2,500.00; that after moving onto said land the defendants immediately began to improve the same; that they practically rebuilt the house and constructed a permanent stone garage and made other improvements thereon and spent, of their own money, in making such improvements approximately the sum of $3,000.00; that up to that time neither the father nor the mother had ever expressed to the defendants that such was the agreement as to the note, and defendants allege that the idea of the note was first conceived by the plaintiff, George D. Rule, after the

whole transaction was consummated; . . . ".

Paragraph 10 of the answer, as set forth in the case-made, alleges that had defendants known that the parents would demand the execution of such a note, they would not have accepted the proposition, but owing to the fact that the land had been acquired under the conditions alleged in the answer, and that improvements had been placed thereon by defendants to the extent of $3,000, and since the father and mother are both convinced "that such a note in the sum of $2,500, payable on demand, with the provision that demand for payment is not to be made until the mother's estate is probated and then to be paid out of the defendant's (Dora DeMoss's) one-third interest in the mother's estate; a copy of said note so tendered as aforesaid is hereto attached, marked 'exhibit A' and made a part of this answer . . ." Apparently there is an omission in this paragraph of the answer as contained in the case-made. Said paragraph as quoted in defendant's brief is that "since the father and mother are both convinced that such a note was to be executed the defendant, Dora DeMoss, now tenders into court a note in the sum of $2,500.00, payable on demand," etc. We treat the answer as containing such tender. The answer also denies that there was an agreement that the plaintiff was to be repaid out of the sale price of the land or that plaintiff was to have a lien thereon, and further alleges that plaintiff was to be recompensed solely from the mother's estate. It is not alleged that the mother was a party to any agreement concerning the $5,000. It was then alleged that it was never agreed that the $2,500 was to draw interest, but that it was understood that the plaintiff was to use a farm owned by the mother to the extent of the privilege of pasturing his cattle thereon and taking alfalfa hay therefrom and was to have the general management of the mother's farm during her lifetime.

The issues were tried to the court,

resulting in findings and judgment for the plaintiff, that defendant Dora De-Moss is indebted to plaintiff by reason of the gift of $2,500 made to him by George Rule, father of plaintiff and Dora DeMoss, for the use and benefit of plaintiff, in the sum of $2,500, with interest at 4% per annum, payable annually, from February 12, 1941, the principal to mature and be payable either upon the sale of the land involved or upon the settlement of the estate of Orpha Rule, mother of plaintiff and defendant Dora DeMoss, whichever occurs first; declaring said indebtness a lien upon the premises involved; execution on the principal of such indebtedness to be stayed until the maturity thereof as aforesaid, but that execution upon the interest may be levied upon the accrual and nonpayment of any annual installment, provided that execution upon the interest then due and unpaid was to be stayed for six months from the date of the judgment. Defendants appeal.

Defendants assert error under four propositions. Under the first proposition, authority is cited under the rule that had plaintiff pleaded and proved defendant Dora DeMoss orally agreed to give him a lien on the real estate and then violated such agreement, the same would not have been enforceable so as to impress a lien upon the land, because of the statute of frauds. That question is not in this case. Plaintiff did not plead that defendant Dora De-Moss had agreed orally or otherwise to give him a lien on the land and there is no evidence of such agreement.

The evidence is that in the latter part of 1940, the father, George Rule, had something more ·than $5,000 in the bank; that he told his children, plaintiff and defendant Dora DeMoss, that he intended to give each of them $2,500, and expressed the desire that the gift so to be made should be invested in land; that about the time the gifts were to be consummated, he expressed the desire that the money be invested in the land here involved, which he had once before sought to purchase for himself; that defendants were reluctant to purchase that particular land for the reason that it would require them to incur more indebtedness than they felt willing to assume; that they suggested the purchase of other less valuable land; but it was ‚finally agreed by all that the land here involved should be purchased, and it was purchased, and the $5,000 which the father was giving to the two children was used as a part of the purchase price. As to the above facts, the evidence is not in conflict. There is conflict in the evidence as to what the agreement was concerning how plaintiff was to be reimbursed for his one-half of the $5,000, which the father was giving the two children. Plaintiff testified that his part of the gift was to be used in purchase of the land and that defendant Dora DeMoss agreed at the time and before the money was paid over in the purchase of the land, that defendants were to make, execute, and deliver to plaintiff a demand promissory note for 2,500, payable to plaintiff, with interest thereon at the rate of 4% per annum, payable annually, with an indorsement thereon in substance that "it is agreed that this note shall not be presented for payment except upon the sale of the land or the settling of mother's estate, whichever comes first." He further testified that the land referred to was the land in question and that the mother's estate referred to was the estate of the mother of plaintiff and defendant Dora DeMoss; that at the time the deal was to be consummated, plaintiff was unable to be present and that defendants agreed to execute such note and mail it to plaintiff; that after the deal was closed, defendants refused to execute and deliver such note. In this, he was corroborated to some extent by the father, who testified, in substance, that he did furnish the $5,000 as part of the purchase price of the land; that the $5,000 was a gift to his two children, $2,500 to each; that he understood that some papers or instruments in writing were to be executed by defendants showing plaintiff's interest in the gift;

that plaintiff was not present when the money was paid over and he inquired of defendants at the time (C.M. 108) whether they had made the proper papers to protect George (plaintiff), and that defendants informed him that they had done so, and that without such representation he would not have turned the money over. He also testified that he understood that the arrangements were that plaintiff and defendant Dora DeMoss were each to have a one-half interest in the land and that he trusted Dora to make the deed as agreed upon (C.M. 116).

The testimony of defendants was that there never was an agreement that they were to give plaintiff a demand note, or any note; that the agreement was that Dora was to have all the $5,000 which the father advanced and that she was to take title to the land; that plaintiff was to be reimbursed or repaid only out of whatever interest Dora DeMoss might have in the estate of her mother after the mother's death; that Dora was to pay no interest, but that plaintiff was in the meantime to have the use or partial use of a farm owned by the mother; that it never was agreed that plaintiff should be repaid out of the sale price of the land in case it should be sold. It was not shown that the mother was a party to the agreement as to how the $5,000 gift was to be handled.

Defendant Dora DeMoss testified that after she learned that the father and mother were contending that she was to give plaintiff a note, she was willing to give a note, such as was tendered in the answer, which was in the following form:

"Perry, Oklahoma, September 12, 1942                                   $2,500.00

"On demand, as herein provided, I promise to pay to the order of GEORGE D. RULE TWENTY-FIVE HUNDRED and no/100 ($2500.00) Dollars, for value received, without interest.

"Demand for payment is not to be made until the estate of Orpha Rule, mother of the maker and payee, is probated, and thereupon, the amount of this note is to be paid out of the maker's one-third (1/3d) interest in the estate of the said Orpha Rule.

"P.O. RFD #3, Perry, Okla.

"(Signed) Dora DeMoss"

The finding of the court sustains the contention of the plaintiff. While the evidence is in conflict to the extent above stated, it cannot be said that such finding is against the clear weight of the evidence.

Defendants contend that under the record the trial court erred in impressing a lien on the land. They assert that they do not know upon what theory the court established plaintiff's lien on the land. They assert that the legal rights of the parties were established by their agreement and that a court of equity will not destroy such legal rights. They invoke the rule stated in Hedges et al. v. County of Dixon, 150 U. S. 182, 37 L. Ed. 1044, that

"A court of equity, in the absence of fraud, accident, or mistake, cannot change the terms of a contract."

They also cite the rule stated in York v. Trigg et al., 87 Okla. 214, 209 P. 417, quoted with approval in Phelan et al. v. Roberts et al., 182 Okla. 202, 77 P. 2d 9, that

"Where the rights of parties to an action are clearly defined and established by law, equity has no power to change or unsettle such rights. The maxims of equity may be invoked to protect an existing right, but are unavailable to create a right where none exists. Equity follows the law."

Plaintiff contends that this is not a suit based upon a contract and that plaintiff is not seeking to enforce specific performance of a contract. Plaintiff contends that the action is one to establish and enforce a constructive trust and that same is based upon fraudulent acts of defendants in wrongfully getting possession of the $2,500.

60 O. S. 1941 § 137 provides:

"When a transfer of real property is

made to one person, and the consideration therefor is paid by or for another a trust is presumed to result in favor of the person by or for whom such payment is made."

Trusts, with regard to the manner of their creation, are divided primarily into two classes, express and implied. As ordinarily classified, implied trusts are subdivided into two classes: resulting and constructive. 65 C.J. 220.

"Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. The feature which distinguishes constructive trusts from express trusts and resulting trusts is that the former do not arise by virtue of agreement or intention, either actual or implied, but by operation of law, or, more accurately, by construction of the court, regardless of, and ordinarily contrary to, any intention to create a trust; they are entirely in invitum, and, for the purpose of working out right and justice and preventing fraud, are forced upon the conscience of the trustee in favor of the person defrauded. . . ." 65 C.J. § 215, p. 454.

In Cassidy, Adm'x., v. Gould et al., 86 Okla. 217, 208 P. 780, it is held:

"Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. All instances of constructive trust may be referred to what equity denominates fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations."

In Lewis v. Schafer, 163 Okla. 94, 20 P. 2d 1048, it is held:

"It is a fundamental rule that equity, having once attached in a proper proceeding, will administer complete relief on all questions properly raised by the evidence, regardless of whether or not such questions or issues are specifically raised by the pleadings, as equity will not permit a mere form to conceal the real position and substantial rights of the parties. It always attempts to get at the substance of things and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will not suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction."

And:

"Where a party obtains the legal title to property, not only by fraud or by violation of confidence, or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain it against the rightful owner, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

Fraud, actual or constructive, is an essential element in the creation or existence of a constructive trust. Actual or intentional fraud is not necessary. A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title as against another, provided some confidential relation exists between the two, and providing that raising a trust is necessary to prevent failure of justice. The forms and varieties of constructive trusts are practically without limit. Broadly speaking, they are raised whenever necessary to prevent injustice. 65 C.J. 457.

Under the testimony of the father, George Rule, it is clear that $2,500 of the money he advanced to apply on the purchase price of the land was paid for the benefit of plaintiff and, as he stated, with the understanding that the title was to be taken one-half in plaintiff and one-half in defendant Dora DeMoss, and that he would not have turned the money over but for the assurance by defendants that the necessary papers were drawn to protect plaintiff's interest in the land.

In Pollack v. Leonard & Braniff, 112 Okla. 276, 241 P. 158, it is held:

"A person obtaining money by fraud acquires no title to it, but it is held by him, and all persons claiming under him with notice, in trust for the original owner."

And:

"Equity will follow trust money through any number of transmutations, and restore it to the owner so long as it can be identified in its original or substituted form."

Since the record shows that defendants have placed improvements on the land to the value of something like $3,000, it would hardly be equitable to decree plaintiff to be the owner of a one-half interest in the land.

Under the record and authorities above cited, the trial court was justified in impressing a lien upon the property for the benefit of the plaintiff.

Under the fourth proposition, defendants contend that the burden was upon plaintiff to prove by preponderance of the evidence that the $2,500 of plaintiff's money which went into the purchase of the land was to draw interest at the rate of 4% per annum, and that plaintiff failed to sustain that burden. It is the theory of plaintiff that this is not a suit upon the contract nor a suit to decree specific performance of a contract. This being a case of equitable cognizance, the trial court had full power to administer complete relief on all questions properly raised by the pleadings and the evidence.

Excluding all evidence with reference to an agreement with respect to interest, it would be unfair and inequitable to allow defendant Dora DeMoss the use of the $2,500 for an indefinite time without interest. Aside from any evidence as to an agreement, it would appear that the plaintiff was entitled to the statutory rate of 6% interest. The rate allowed by the court being less than the statutory rate, defendant Dora DeMoss is in no position to complain.

All the facts and circumstances in evidence, as well as the number of witnesses testifying as to a given question, are to be taken into consideration in determining where the preponderance or weight of the evidence lies. Under all the facts and circumstances in evidence in this case, we are inclined to the view that the finding and judgment of the trial court is in accord with the weight of the evidence.

Affirmed.