HOUGH v. FOSTER et al.

No. 35255.   Dec. 23, 1952.

Rehearing Denied March 3, 1953.

Application for Leave to File Second Petition for Rehearing Denied March 24, 1953.

*254 P. 2d 364.*

Green, Farmer & Woolsey, Tulsa, for plaintiff in error.

Gilmer & Kennon and Dorothy Young, Tulsa, for defendant in error, Harold Foster.

BINGAMAN, J. This action was brought by Claude Hough, guardian of Claude Foster, an incompetent, against Harold Foster and certain other defendants, seeking to cancel certain conveyances from the mother of plaintiff and defendant to the defendant Harold Foster, on the ground that the mother, at the time of the conveyances, was mentally incompetent and the victim of undue influence on the part of said defendant, and seeking further to establish a trust in the property to the extent of one-half thereof in favor of plaintiff. The defendant in his answer admits the conveyances of the property to him by his mother but denies that she was infirm and incompetent or acting under the influence of fraud, undue influence or false representations. The trial court heard the evidence of the parties and rendered judgment denying the relief sought by plaintiff, but held that from all the evidence it concluded that the mother intended that the plaintiff should be taken care of out of the property, and awarded plaintiff the sum of $1,800 to pay for back expenses, including hospital bills while in Tulsa, and the sum of $90 per month from the date of the judgment. Plaintiff appeals.

The record is voluminous, consisting of one large volume of pleadings and testimony and two large volumes of exhibits, and it is impossible to set out the evidence in detail. Undisputed facts are as follows:

Plaintiff and defendant were the sons of Willard and Minnie Foster, plaintiff being the older of the two sons. Willard Foster died, testate, in 1931, leaving his entire property, which consisted of a family residence in Tulsa and a considerable number of royalty interests in various tracts of land in Oklahoma and Texas, to his wife, Minnie Foster, with a proviso in the will that should she remarry each of his sons was to receive an undivided one-third interest in the property; that both plaintiff and defendant, at the suggestion of the attorney who probated the will, and acting upon the belief that their mother, who was then past 60 years of age,

would never remarry, signed a relinquishment of the provision in the will giving them a one-third interest in the property in the event she did remarry. This was done at the suggestion of the attorney in order that the handling of the estate might be more easy and expeditious. Plaintiff, ever since his early youth, had been afflicted with a disability in his hip due to tuberculosis of the joint, which disability necessitated his having his hip operated upon and drained at intervals. In 1927 he married his second wife who divorced him in the fall of 1932. By this wife he had a son and by a family agreement alimony of $75 a month was paid to the divorced wife and $30 per month paid for the support and maintenance of the child. The divorced wife married again in 1940 and thereupon the mother of plaintiff discontinued payments of alimony, but continued for a while to assist in providing for the son. Later these payments were also discontinued.

Plaintiff was addicted to the excessive use of alcoholics, and for a time was kept on a ranch in Arizona under the supervision of the party operating the ranch, apparently in order to prevent his continued indulgence in alcoholic liquors. Sometime in 1934 he left the ranch and went to California, where in 1935, he began living with another woman in a common-law marriage. Later, in 1948, he married this woman by a legal ceremony. Early in 1942, on account of his mental condition, his common-law wife placed him in a sanitarium, but later, when the defendant refused to pay the expenses of keeping him there, had him transferred to a state hospital for mental cases. She testified that his condition at that time was due to a nervous breakdown caused by his worrying over finances. It appears, however, both from her letters and from statements of the physicians at the state hospital, that the plaintiff's condition at that time was due to overindulgence in alcoholics, which had softened his brain and made him the subject of various

hallucinations. He was in this hospital in this condition at the time, in July, 1942, when his mother deeded the property of the estate to defendant. In 1947 the hospital physicians advised defendant that, in their judgment, his condition was permanent and incurable.

While plaintiff was in Arizona and California and other places, the defendant stayed at home assisting his mother in the management of the estate and looking after her. For a time he worked, but later abandoned his work and spent his entire time assisting his mother in the management of the estate and in looking after her. At the time the estate of the deceased Willard Foster was probated and shortly after the time when plaintiff and defendant signed their renunciations of their contingent interest in the will of their father, she made a will giving each of them an undivided one-half interest in the property. At that time both resided in the home. Later, in 1939, she made another will leaving the plaintiff and defendant each one-half of the property, and appointing defendant and a minister, a long standing friend of the family, as trustees for plaintiff to administer his one-half of the estate. At about the time she conveyed the property to defendant she made a third will devising all the property to defendant. In 1944, plaintiff was paroled from the state hospital to the custody of his wife in order that he might go to Arizona to receive treatment by a physician who had treated him while he was on the ranch. Instead, he came to Tulsa, where the mother signed a petition to have him declared insane and he was found mentally incompetent and returned to California to a state hospital. Up to that time apparently his brother had contributed every month or almost every month to his wife to provide for plaintiff's comfort in addition to the provision made by the hospital, but after that time he sent his contributions to the hospital. Plaintiff was again paroled at some time after the death of

his mother and come to Tulsa and instituted this action by his guardian.

During all this time defendant had remained in Tulsa looking after the estate and caring for his mother. The mother transferred her account in the bank to defendant and her jointly and thereafter transferred it entirely to defendant, who from that time apparently assumed complete charge of all her affairs and business of every kind. At the time of her death the mother was past 80 years of age.

Plaintiff to reverse the judgment of the lower court makes five contentions. The first is that where the lawyer probating the estate persuaded the two sons to renounce their contingent interest in the estate by telling them that the widow would leave the property in equal shares to them, and subsequently a will was made by the widow which divided the property equally between the sons, the later conveyance to one son of all the property was a violation of the agreement, and the property should be impressed with a trust for the beneficial interest of plaintiff to the extent of one-half thereof. In support of this contention plaintiff cites Bunte v. Hasley, 122 Okla. 81, 251 P. 591; Stricker v. Billingsley, 169 Okla. 145, 36 P. 2d 474; Perry v. Shaver, 101 Okla. 248, 225 P. 359, and many decisions from other jurisdictions. Examination of these cases, however, discloses either a contract between the parties, or an understanding between them, by which the parties claiming the existence of the trust were assured that their interest in the property would be protected and vested in them at a later date. The evidence in the instant case wholly fails to establish anything of this sort. While the attorney testified that he represented to both sons that it was extremely improbable the mother would remarry, in which they agreed with him, and that they would share equally in the estate at her death, he testified that he had no authority from the mother to make such statement, but that same was

merely his conclusion from his knowledge of the mother's affection for both of the sons, and that at that time she did not inform him of her intention to make the will which she shortly thereafter made. Thus it is seen that the statements of the attorney, according to his own testimony, were not to be attributed to any agreement with the mother, but were based solely upon his own judgment. It further appears that the contingent interest of the sons was so remote and the occurrence of the contingency so extremely improbable in their judgment that they in reality relinquished nothing of value, and realized they were not at the time of signing the renunciations. We find in the record no evidence of any agreement between the mother and the sons or between the defendant and plaintiff which supports the contention of plaintiff.

The second contention is that where a voluntary conveyance or gift from an elderly parent to one son is not a just or reasonable disposition of the property when the value of the estate, and the age and physical condition of the parent, and the circumstances surrounding the gift, suggest fraud and undue influence, fraud and undue influence will be presumed and the burden is on the donee to overcome the presumption of fraud and undue influence. This contention is likewise untenable, since there is no evidence in the record of any circumstances suggesting fraud or undue influence exercised by the defendant over his mother. The great weight of the testimony is, that at the time of the conveyances the mother was mentally competent in every respect and in full possession of her faculties; that the defendant had for many years looked after her and assisted in the transacting of the family business; that their relations were close and affectionate, and that she knew at the time the situation of plaintiff and believed that the defendant would take care of the plaintiff in so far as he was able to do so. She did not make this a condition in the transfer of the

estate to him, but left that entirely to his own judgment. The evidence all shows that after the conveyance of the properties to him the mother continued to live in the family residence and the son looked after her welfare, handled her business affairs and in every way he was able shielded her from further knowledge of the condition of plaintiff which would cause her unrest or grief. This care of his mother and his concern over her welfare continued unremittingly as long as she lived. Defendant testified that he was unable to send plaintiff or plaintiff's wife the amounts they requested because the income · from the estate was insufficient after providing for his mother's and his own needs, and he was assured by the hospital authorities in California that good care was being taken of the plaintiff in the institution, and that only a small amount to buy him cigarettes was necessary to be contributed. He testified that his refusal to pay the hospital bill incurred by plaintiff in Tulsa was due to the fact that plaintiff had filed this action, and that he refused to pay under compulsion, but that he fully intended to provide for his brother's living expenses subsequent to the determination of the action if the action were decided in defendant's favor. We find nothing to substantiate the charge of fraud or undue influence or of the presumption thereof.

The third contention is that where a donor conveys her property to one son to the exclusion of another, but, in a separate affidavit made to assist the son to whom the property was given to avoid being drafted for military service, states that she had transferred her property to him so that he might readily handle all of her affairs and take care of his invalid brother, an express trust is created. From the evidence it appears that defendant, who was a veteran of World War 1, was called by the draft board in World War 2, and that in support of his attempt to avoid being drafted his mother made an affidavit that defendant handled all her business

affairs, and looked after her son Claude, who was an invalid and needed constant supervision; that he was the only person she had to attend to her affairs and the only relative capable of looking after her invalid son, and that at present she was transferring all of her property to the defendant in order to enable him as head of the family to more readily handle all affairs. In that connection defendant stated in his questionnaire that he had an invalid brother whom he had taken care of since 1930, and that he had numerous tasks to do for his brother's son who was then some thirteen years of age; that while plaintiff had been necessarily confined in an institution his improved condition and the financial responsibility necessitated defendant's returning this brother to his home, and that his mother could not live in the same house with plaintiff unless defendant was in Tulsa where he could have charge of the situation. We see nothing in these statements which in our judgment was sufficient to create an express trust, but the statements of the mother evidence her reliance upon the defendant and her feeling that he would care for his invalid brother, which, as pointed out in a preceding portion of this opinion, the evidence shows he had done to the best of his ability and continued to do down to the filing of this action.

The fourth contention is that where the conveyance made by the widow of all her estate to one of her sons, but the facts and circumstances and a family arrangement show that the two sons were to share equally in the estate of the mother, and the son who received the property declines to share with the other, the court will create a trust in equity by operation of law; in other words, a constructive or resulting trust. Plaintiff cites Wright v. Logan, 179 Okla. 350, 65 P. 2d 1217; Tolon v. Johnson, 104 Okla. 201, 230 P. 865; Reigel v. Wood, 110 Okla. 279, 229 P. 556, and other similar cases in support of this contention. We are unable to agree, and do not consider these cases appli-

cable to the instant case. While it is true that the widow remained in the home, and that for a .time after the transfers to defendant moneys received from the properties went into a joint account in the bank along with some annuity insurance payments which she received, it is evident that this was done to enable her to write checks for her living expenses and such other expenses as she incurred, in which the defendant apparently gave her free hand. We find nothing in that arrangement evincing an intention on the part of the mother that the plaintiff should share equally in the property so transferred. In our judgment, the situation simply reflects the trust and confidence which the mother had in the defendant, and which, as pointed out above, was wholly justified.

The last contention is that the judgment of the court that defendant should only pay his brother the sum of $90 per month, and its finding that it was the intention of the donor of the property that the plaintiff should at least have enough money to keep him from want is contrary to the weight of the evidence. The trial court based its judgment on the fact that that sum of money would sustain the life of an ordinary citizen, and that it was sufficient to pay the ordinary living expenses of plaintiff, and that when she transferred the property, the mother did so believing that the defendant would take care of the plaintiff at least to that extent, but left the amount of money to be given plaintiff and the extent of the care to be taken of him by the defendant solely to the judgment of the defendant.

The finding by the trial court that the mother left the amount of money to be given plaintiff and the extent of care to be taken of him by the defendant solely to the judgment of the defendant is, we think, supported by the great weight of the evidence. Whether the amount fixed by the court as a monthly payment was sufficient is, in our judgment, doubtful, and we think that the

sum should be increased to at least $100 per month. Whether the trial court was justified in rendering this judgment against the defendant is a matter which we need not determine, since defendant has not cross-appealed.

Careful study of the record convinces us that the judgment of the trial court, in all save as to the amount above set forth, is not clearly against the weight of the evidence, but is in accord with the great weight thereof.

The judgment is modified to require defendant to pay plaintiff or his guardian out of the income from the estate of his deceased mother the sum of $100 per month, and, as modified, is affirmed.

HALLEY, V. C. J., and WELCH, CORN, and DAVISON, JJ., concur. GIBSON, JOHNSON, and O'NEAL, JJ., dissent.