Ella Hicks SAAK, as Administratrix of the Estates of Wilbert Herbert Hicks and Justine Hicks, both deceased, Plaintiff in Error,

v.

Helen W. HICKS, Lewis L. Hicks, Sterling Oil of Oklahoma, Inc., a corporation, Marion Hicks and Ernest Hicks, Defendants in Error.

No. 37297.

Supreme Court of Oklahoma.

Jan. 28, 1958.

**426**

P. D. Erwin, Chandler, for plaintiff in error.

O. J. Roberts, Oklahoma City, W. Custer Service, Edmond, Richard James, Stroud, for defendants in error.

JACKSON, Justice.

This action is by Ella Hicks Saak, Administratrix, v. Helen W. Hicks, et al.

The principal issues presented in this appeal are (1) whether plaintiff has proved a constructive or resulting trust in the land in question; and (2) whether a deed conveying a homestead is valid without the signature of the grantor's spouse where the deed has been of record with the county clerk for more than ten years as provided in 16 O.S.1953 Supp. § 4.

In 1928, Wilbert Herbert Hicks owned three pieces of property, described as the "Deep Fork Place" (120 acres), the "Patiquah Place" (40 acres), and the "Stroud Property" (5 acres in Stroud). On June 19, 1928, for "$1.00 and other consideration" Hicks executed a quitclaim deed conveying these three pieces of property to his daughter, Helen W. Hicks, principal defendant herein.

Wilbert Herbert Hicks died on March 18, 1947, having lived on the Stroud property since 1915 or 1916. Hick's wife, Justine Hicks, lived on the Stroud property from about 1916 until she was committed to an institution for the insane on June 20, 1922. She remained in the institution until her death on December 20, 1952.

Ella Hicks Saak, granddaughter of Wilbert and Justine Hicks, was appointed administratrix of their estates on April 20, 1954, and filed this action on April 30, 1954.

In seeking to establish a trust in the "Deep Fork Place" and the "Stroud Property" plaintiff, Ella Hicks Saak, administratrix, alleged in substance that Helen W. Hicks paid no consideration for the quitclaim deed; that the deed was given upon the implied and express oral agreement that Helen would hold the title to the premises for the use and benefit of her father and mother and their heirs.

Plaintiff further alleged that Helen paid the income from these properties to Wilbert

and Justine Hicks during their lifetime, and never asserted a beneficial title until November 18, 1953.

Plaintiff further alleged that the Sterling Oil Company, a defendant herein, has four producing oil wells on the Deep Fork Place under a lease executed by Helen on November 18, 1951, and that Helen had divided the lease bonus money among the heirs; and that she had theretofore divided lease bonus money from the Patiquah Place.

The proof does not show what consideration Helen paid for these properties, if any, and there is no proof that Helen ever gave her father or mother any of the income from these properties.

The proof shows that Helen is a school-teacher and lived away from home most of the time. Her father had confidence in her and on one occasion is reported to have stated that "Helen is the only one left in the family to transact business and he knew she would divide up with all the children." At or about the time of her father's death Helen told plaintiff's mother "if anything valuable comes off the land that the children would equally share it."

In a letter written by Helen to plaintiff in 1948, she stated that "We leased the Patiquah place for $850.00. I paid the rest of the funeral expenses and got a grave marker for Dad. There was $84.00 each for the kids. You and Lucille get (your father) Joy's part. Anytime I divide money at all you and Lucille will get your part. Wish it had been more."

The lease bonus money from the Deep Fork Place was divided among the children and plaintiff got her part.

On November 18, 1953, Helen wrote plaintiff a letter and stated in part as follows:

"* * * at one time I had ideas of doing things differently, but as things now stand I've changed my mind and have decided to do things like Dad said for me to do. That is, look after the needy members of the family first. * * * After all the land is mine * * *. That is the way Dad wanted

it. It is not inheritance. At no time did he ever say share and share equally. * * * He wanted me to look after the small children that might need it. * * * he thought my judgment about such things was all right. * * * Besides Dad intended for me to look after me too. * * * If the income ever gets such that it will amount to a great deal I'll share with any member of my family. * * * Right now I intend to help the poorer members."

At the conclusion of plaintiff's evidence the trial court sustained demurrers to plaintiff's evidence and from judgment thereon, plaintiff appeals.

■■ We think the demurrers to plaintiff's evidence were properly sustained. There is no evidence of fraud in the procurement of the deed and it does not appear necessary to raise a *constructive* trust in order to prevent an injustice. In De Moss v. Rule, 194 Okl. 440, 152 P.2d 594, 599, it is said:

"Fraud, actual or constructive, is an essential element in the creation or existence of a constructive trust. Actual or intentional fraud is not necessary. A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title as against another, provided some confidential relation exists between the two, and providing that raising a trust is necessary to prevent failure of justice."

In the third paragraph of the syllabus in Maynard v. Taylor, 185 Okl. 268, 91 P.2d 649, in reference to *resulting* trusts, it is held:

"A resulting trust arises by operation of law where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title."

When the evidence in this case is taken as a whole it is reasonably clear that Wilbert Hicks wanted his daughter, Helen, to have both the beneficial and legal title in order that she might effectively look after the needy members of the family and small children. It is further observed that there is nothing in the evidence indicating that he made these purposes a *condition* in transferring the estate to her. Apparently he had confidence that she would look after the needy members of the family and small children. This could not be accomplished unless he intended that beneficial title would be enjoyed with the legal title.

In Hough v. Foster, 208 Okl. 226, 254 P.2d 364, 367, Mrs. Foster conveyed all of her property to her son, the defendant. She gave nothing to her other son, the plaintiff, who was addicted to the use of alcohol. In the body of the opinion we said:

"The great weight of the testimony is that * * * she (Mrs. Foster) knew at the time the situation of plaintiff and believed that the defendant would take care of the plaintiff in so far as he was able to do so. She did not make this a *condition* in the transfer of the estate to him, but left that entirely to his own judgment."

In the syllabus we held that the evidence was not sufficient to support the creation of an express trust or an implied trust in equity, or a constructive or resulting trust in favor of the plaintiff as to a one-half interest in the property so conveyed.

We conclude that the trial court did not err in sustaining defendants' demurrers to plaintiff's evidence.

■ It is earnestly contended that since the Stroud Property constituted the homestead of Wilbert and Justine Hicks the deed to Helen, without the signature and consent of Justine, was void. It must be admitted that the deed was void when given and is now void unless validated by the 1953 amendment to 16 O.S.1951 § 4. That section, as amended, provides in part:

"And provided that, notwithstanding anything in this section to the contrary, a deed relating to the homestead shall be valid without the signature of the grantor's spouse, and the spouse shall be conclusively deemed to have consented thereto, where the same shall have been duly recorded in the office of the county clerk of the county where the real estate is situated for a period of ten (10) years prior to a date six (6) months after the effective date hereof, and thereafter when the same shall have been so recorded for a period of ten (10) years, and no action shall have been instituted within said time in any court of record having jurisdiction seeking to cancel, avoid or invalidate such deed relating to the homestead by reason of the alleged homestead character of the real estate at the time of such conveyance."

The question presented is whether Sec. 4, as amended, violates constitutional provisions.

Art. 12, § 2, Oklahoma Constitution provides in part:

" * * * nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; * * *."

Art. 12, § 3, Oklahoma Constitution provides in part:

" * * * The Legislature may change or amend the terms of this article."

In considering the problem we observe that under Sec. 6 of Title 16 O.S.1951, the husband may convey the homestead without being joined by his wife, where his wife has voluntarily abandoned him for a period of one year or from any cause takes up her residence out of the State. The validity of Sec. 6 was upheld in Armstrong v. Independent Oil & Gas Co., 95 Okl. 231, 219 P. 353. We held therein that the last sentence of article 12, § 3 authorizing the Legislature to change or amend the terms of

article 12 placed the power in the Legislature to alter the homestead provisions of the Constitution and the method of conveyance of the same. Though not mentioned in the opinion, or in the statute, it will be observed that the conveyance of the homestead by the husband was approved without regard to the "consent" of the wife.

Plaintiff contends that the provisions of Sec. 4, supra, as amended in 1953, which provides that "the spouse shall be conclusively deemed to have consented thereto" is an usurpation of judicial power in that it creates a conclusive presumption and denies due process in foreclosing a litigant's opportunity to make his proof and have a fair hearing, citing Wilson v. Wood, 10 Okl. 279, 61 P. 1045.

In our view the conclusive presumption set forth in the statutory amendment has no controlling significance. The statute declares that at the end of the time fixed the deed shall be *valid*. The conclusive presumption adds nothing to this validating clause. It merely directs the court to forbear inquiry into the question of consent. See in this connection City of New Port Richey v. Fidelity & Deposit Company of Maryland, 5 Cir., 105 F.2d 348, 123 A.L.R. 1352.

We hold that Sec. 4, supra, as amended in 1953, is a valid exercise of the legislative power granted in Sec. 3, Article 12, of the Oklahoma Constitution, and that the action herein was not filed until after the deed became valid.

Plaintiff contends that the deed was void at the time it was executed and, therefore, it could not subsequently be declared valid as this would constitute an impairment of vested rights. The same question was before the court in Pelt v. Payne, 90 Ark. 600, 30 S.W. 426, 427. In that case the Supreme Court of Arkansas said:

"It has also been urged that this act is unconstitutional and void for the reason that it was beyond the power of the legislature to cure and make valid a void deed. We think that this contention is not based on sound principles,

for it is settled law that when a deed or other conveyance is invalid by the reason of the failure of the parties thereto to conform to some formality imposed by the statute, the legislature, which imposed the formality, may by subsequent act cure the defect, and give the deed such effect as the parties thereto intended that it should have at the time of its execution."

The only difference in the Arkansas case and the case at bar is that consent of both spouses to the conveyance of the homestead was not required by the Arkansas Constitution. Such requirement had been fixed by statute. In our opinion this difference is of slight import. The right or privilege of the non-signing spouse is no greater merely because it was created by the Constitution rather than by Statute, where, as here, the constitutional provision creating such right is expressly limited by another constitutional provision granting the legislature the power to modify the right so created. Furthermore, the provision extending the time for a period of six months after the effective date of the amendment within which to bring an action constitutes an added protection insofar as claimed vested rights are concerned. See Burwell v. Tullis, 12 Minn. 572, and Woods v. Phillips Petroleum Co., 207 Okl. 490, 251 P.2d 505.

Plaintiff contends that Sec. 4, as amended, is a statute of limitations and since not pleaded is not available as a defense. The amendment effectively validated the deed and destroyed the cause of action. It did more than destroy the remedy, it destroyed the right. It was not necessary to plead this statute. See the rule as expressed in 34 Am.Jur., Limitation of Actions § 429.

It is contended that the trial court erred in refusing plaintiff's request for a jury trial. Plaintiff's petition contained a cause of action in ejectment, based upon the claimed invalidity of the deed, by reason of the fact that it was a homestead.

We have heretofore held that if one seeking possession cannot establish a

title sufficient to justify an award of possession without the cancellation of a deed, Lee v. Terrell, 170 Okl. 310, 40 P.2d 10, or some action of the equity court, Ward v. Lindly, Okl., 294 P.2d 296, the cause is primarily of equitable cognizance and triable to the court. However, plaintiff argues that where the deed is void as opposed to voidable no affirmative action of the equity court is necessary; therefore the ejectment action, based upon the claimed invalidity of the deed, was triable to a jury, citing Harjo v. Chilcoat, 146 Okl. 62, 294 P. 119. The claimed distinction is somewhat tenuous, and in any event is not material in this case. The petition shows on its face that the deed was recorded in 1928, and was therefore valid by virtue of the 1953 amendment to 16 O.S.1951 § 4. Thus there was no issue to try in the ejectment action, and it was not error to deny a jury trial. Kassner v. Alexander Drug Co., 194 Okl. 36, 147 P.2d 979.

The other cause of action was to establish a trust, and we have held that an action to declare a trust in real estate is one of equitable cognizance, and neither party in such an action is entitled to a jury trial as a matter of right. Guyer v. London, 187 Okl. 326, 102 P.2d 875.

We conclude that the trial court did not err in denying plaintiff's motion for a jury trial.

Finally it is contended that the trial court erred in overruling plaintiff's motion for new trial on the ground of newly discovered evidence. We have carefully examined and considered the alleged newly discovered evidence and have concluded that the newly discovered evidence, if true, is not such as would, or should, change the result of the trial. Wood v. Polk, 193 Okl. 156, 141 P.2d 796.

Affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS and CARLILE, JJ., concur.

BLACKBIRD, J., concurs in result.